IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-YORK,

IN JANUARY TERM, 1815, IN THE THIRTY-NINTH YEAR OF OUR
INDEPENDENCE.

---

### JACKSON, *ex dem.* GOUCH, *against* WOOD.

THIS was an action of ejectment for lot No. 7. in the town of *Locke,* in the county of *Onondaga,* and was tried before Mr. Justice *Thompson,* at the *Cayuga* circuit, in *June,* 1813.

*A conveyance of a freehold, or estate in fee, must be by deed, or writing under seal.*

The lessors of the plaintiff gave in evidence the exemplification of a patent, dated the 13th of *June,* 1791, to *John Day,* for the lot in question. He then proved that *Moses Gouch* was the identical person who served and was known in the *New-York* line of the army by the name of *John Day,* and that he was the same person to whom the patent was granted by that name. It was also proved that *Moses Gouch, alias dictus John Day,* was dead, and that the lessors of the plaintiff were his heirs at law.

The defendant gave in evidence an instrument in writing, endorsed on the original patent, dated the 19th of *November,* 1792, signed " *John* his mark *Day,*" but without any seal, by which he, *John Day,* for the consideration of ten pounds, paid to him by *Benjamin Prescott,* bargained, sold, remised, released, and quit-claimed to the said *Benjamin Prescott,* his heirs and assigns, all

his right, title, claim, and interest, of, in, and to, the premises granted and described in the patent, to have and to hold the same to the said *Benjamin Prescott* and to his heirs and assigns, to his and their only proper use and benefit for ever; and to this instrument the names of two witnesses were subscribed.

There never having been any *seal* to the writing thus endorsed on the patent, it was objected, on the part of the plaintiff, that it amounted to no more than a *parol* contract, and was not sufficient to pass the land. This point was reserved by the judge, and the defendant gave in evidence sundry mesne conveyances from *Benjamin Prescott* to himself, all of which had been duly recorded; he also showed a possession for seven or eight years. A verdict was taken for the plaintiff, subject to the opinion of the court on a case, as above stated.

*Seely,* for the plaintiff.

*Van Buren,* contra.

PLATT, J. delivered the opinion of the court.

The single question in this case is, whether an *estate in fee* can be conveyed otherwise than by *deed :* that is to say, whether a *seal* is essential to such conveyance ?

The earliest mode of transferring a freehold estate, known in the *English* common law, was by *livery of seisin* only. (*Co. Lit.* 49 b. 48 b.) But when the art of writing became common among our rude ancestors, the deed of *feoffment* was introduced, in order to ascertain with more precision the nature and extent of the estate granted, with the various conditions and limitations. This deed, however, was of no validity, unless accompanied by the old ceremony of livery and seisin. (2 *Black. Com.* 318.)

The statute of *uses* (27 *Hen.* VIII.) gave rise to the deed of *bargain and sale;* and soon afterwards, the conveyance by *lease and release* was introduced, in order to avoid the necessity of enrolment, required by the statute of 27 *Hen.* VIII. (2 *Black. Com.* 343.) By virtue of the statute of uses, which we have adopted, (without the proviso in the *English* statute requiring the enrolment of deeds,) the deed of bargain and sale, now in use here, is equivalent to the deed of feoffment

with livery of seisin, (2 *Black. Com.* 339. 343.) and has, in practice, superseded the *lease and release.*

By the common law, estates *less than a freehold* might be created or assigned, either by *deed,* by *writing, without seal,* or by *parol merely.*

By the 29 *Car.* II. c. 3. (9th and 10th sections of our " act for the prevention of frauds") it was enacted, " that all leases, estates, interest of freehold, or terms of years, or any uncertain interests in lands, &c. made or executed by livery and seisin only, or by parol, and not in writing, and signed by the parties so making and creating the same, shall have the force and effect of leases or estates at will only ; excepting leases for three years and less," &c. ; and " that no leases, estates, or interests, either of freehold, or terms of years," &c. " in any lands," &c. " shall, at any time hereafter, be assigned, granted, or surrendered, unless it be by deed or note in writing, signed by the party so assigning, granting, or surrendering the same," &c.

Now, it is contended on the part of the defendant, that the common law mode of conveyancing has been so modified by this statute, as to destroy the distinction between an estate of *freehold,* and an estate *less than a freehold,* as it regards the mode of alienation ; and that *either* may now be conveyed by "*note in writing*" without seal, as well as by *deed.*

No direct decision appears to have been made on this point ; but in the case of *Fry* v. *Philips,* (5 *Burr.* 2827.) and in the case of *Holliday* v. *Marshall,* (7 *Johns. Rep.* 211.) it was decided, that a written assignment of a lease for ninety-nine years was valid, though not sealed ; upon the express ground, that it was the sale of a *chattel-real,* for which the statute of frauds requires only a " note in writing ;" plainly recognising the distinction between a *term for years,* and a *freehold estate,* as to the mode of conveyance.

According to Sir *William Blackstone,* (2 *Black. Com.* 309. &c., *sealing* was not in general use among our *Saxon* ancestors. Their custom was, for such as could write, to sign their names, and to affix the sign of the cross ; and those who could not write, made their mark in sign of the cross, as is still continued to this day. The *Normans* used the practice of *sealing only,* without writing their names ; and, at the conquest, they introduced into *England waxen seals,* instead of the former *English*

mode of writing their names and affixing the sign of the cross; It being then usual for every freeman to have his distinct and particular seal. The neglect of signing, and resting upon the authenticity of seals alone, continued for several ages, during which time it was held, by all the *English* courts, that sealing alone was sufficient. But in process of time, the practice of using particular and appropriate seals, was, in a great measure, disused; and Sir *William Blackstone* (2 *Black. Com.* 310.) seems to consider the statute of 29 *Car.* II. c. 3. (of which the 9th and 10th sections of our statute of frauds are a copy) as reviving the ancient *Saxon* custom of *signing*, without dispensing with the *seal*, as then in use, under the custom derived from the *Normans*.

We have the authority of that learned commentator, unequivocally in favour of the opinion, that a *seal* is indispensable in order to convey an estate in fee simple, fee tail, or for life. (2 *Black. Com.* 297. 312.)

Such seems to have been the practical construction, ever since the statute of *Car.* II. in *England*, and under our statute of frauds in this state; and to decide now, that a seal is unnecessary to pass a fee, would be to introduce a new rule of conveyancing, contrary to the received opinion, and almost universal practice, in our community; and dangerous in its retrospective operation. Construing this statute with reference to the preexisting common law, and the particular evil intended to be remedied, I think the legislature did not intend to dispense with a seal, where it was before required, as in a conveyance of a freehold estate; but the object was to require such deeds to be *signed* also, which the courts had decided to be unnecessary.

I construe this statute as though the form of expression had been thus: "No estate of freehold shall be granted, unless it be by deed *signed* by the party granting; and no estate less than a freehold (excepting leases for three years, &c.) shall be granted or surrendered, unless by deed, or note in writing *signed* by the grantor."

This venerable custom of *sealing*, is a relic of ancient wisdom, and is not without its real use at this day. There is yet some degree of solemnity in this form of conveyance. A seal attracts attention, and excites caution in illiterate persons, and thereby operates as a security against fraud.

If a man's freehold might be conveyed by a mere *note in writing*, he might more easily be imposed on, by procuring his signature to such a conveyance, when he really supposed he was signing a receipt, a promissory note, or a mere letter.

The plaintiff is entitled to judgment.

Judgment for the plaintiff.(a)

(a) See *Warren* v. *Lynch*, (5 Johns. Rep. 239.) as to the origin, nature and use of seals.