## WARREN *vs.* LELAND.

Where by an unsealed contract signed by S. and F., S. bargained and agreed to sell to F. for $800, the pine timber on certain lots, F. to give his note endorsed by M. for the purchase money; and the note was afterwards executed in pursuance of the contract, and accepted by S. in fulfilment thereof; and F. entered upon the lots and commenced cutting and drawing off the timber; *Held* that the contract was an executed contract; and that on fulfilment of the stipulation to give a note for the purchase money, a present interest in the timber passed to F.

Whether an instrument shall operate to pass an immediate interest in real or personal property, or rest in contract, depends upon the intention of the parties, to be collected from the whole instrument.

Growing trees, being parcel of the land, are within the statute of frauds, and cannot be sold, or conveyed, except by a deed or conveyance in writing.

But growing trees, although parcel of the realty, may be sold or conveyed in perpetuity, by an unsealed writing or conveyance; because by the conveyance a freehold estate does not pass to the grantee.

Estates less than freehold may be created or assigned by deed or writing without seal.

Growing trees, by a valid sale in writing by the owner of the fee in the land, are severed, in contemplation of law, from the land, and become chattels personal.

Where a conveyance of growing trees does not limit the time for the entry of the grantee upon the land to cut and remove the trees, a right of entry passes, for an indefinite or reasonable time, for the removal of all the trees.

A conveyance of standing timber is not within the recording act; and a record of such conveyance is not necessary to protect it against a subsequent bona fide purchaser, without notice, of the land on which the timber stands.

Where the owner of the fee of land sells the trees growing thereon, and afterwards conveys the land, without any exception or reservation, the conveyance of the land will not pass the title to the trees.

Warren *v.* Leland.

And if the grantee of the land cuts and removes the trees, the owner of the trees may bring replevin in the cepit against him.

Where the truth appears by the same deed or record which would otherwise work an estoppel, the adverse party is not concluded from taking advantage of the truth.

THIS was an action of replevin in the cepit for 314 white pine saw logs by measure. The defendant pleaded non cepit, and annexed to his plea a notice of property in the defendant, &c. The cause was tried before Judge Willard, at the Essex county circuit, on the 26th of January, 1847. By a written contract, unsealed, dated December 18, 1833, signed by William Stevenson and Dudley Farlin, Stevenson *bargained and agreed to sell to Farlin,* for the consideration of $800, to be paid in yearly payments of $200 each, with interest annually, *the pine timber on lots* Nos. 23, 24, 25, 26, 27, 33, 34, 49 and 50 in the Schroon tract; Farlin to give his note payable at the Saratoga County Bank, and endorsed by Miles Beach, on or before the 1st of February, 1834. A note dated February 4, 1834, was executed by Farlin and Miles Beach in pursuance of the contract, and accepted by Stevenson in fulfilment thereof. By a written contract dated Sept. 26, 1836, unsealed, signed by Farlin, Farlin *agreed to assign his right to the pine timber,* on the said lots in the Schroon tract to the plaintiff, Nelson J. Warren, agreeably to the contract from Stevenson, and also two certificates from George Webster for the pine timber on lots Nos. 36 and 48 in the Schroon tract ; Warren to pay the amount agreed by Farlin to be paid on lots 36 and 48. It was proved that the plaintiff commenced in 1839 or 1840 taking the timber sold by Stevenson to Farlin, from some of the lots mentioned in the contract of the date of the 18th of December, 1833, and continued taking it off for four or five years. The defendant Leland knew that the plaintiff was taking the timber from off these lots. And before 1843 the defendant knew that the plaintiff had bought the timber on lots 49 and 50. The logs in question were taken from lot 49, by the defendant, in the winter of 1845, and were drawn into Schroon lake. They amounted to 314 by measure. The defendant offered to show that the plaintiff replevied more than 314 logs. This offer was overruled

Warren *v.* Leland.

by the circuit judge; who decided that if such was the case, the defendant's remedy was by a separate action. The defendant excepted. The lots 49 and 50 were granted to Stevenson by letters patent of the state of New-York, dated January 7, 1828. The defendant moved for a nonsuit, which motion was denied by the circuit judge, and the defendant excepted. The defendant proved that Stevenson, by a warranty deed dated December 20, 1843, conveyed lots 49 and 50 to him in fee, without any exception or reservation of the pine timber thereon. The defendant introduced in evidence an agreement with the signature of Stevenson affixed thereto, cancelled, dated Jan. 31, 1834, which was found among the papers of Stevenson, who was dead. The agreement, except the signature, was in the hand-writing of Farlin. It had been signed by Stevenson alone, and in it he certified that for the consideration of $800, he had sold to Farlin all the white pine timber on the lots mentioned in the contract of the date of the 18th of December, 1833; and he thereby allowed Farlin four years, from the 1st day of April then next, to take off said pine timber from the lots. The introduction of this agreement in evidence was objected to by the plaintiff. The defendant then introduced in evidence an agreement of which the following is a copy.

"Cambridge, 27th December, 1837. This obligation certifies, that whereas Dudley Farlin purchased of me the right of cutting and drawing off the pine timber on certain lots (number of lots not known) in Schroon, which right was conveyed on the sale of his property to Nelson J. Warren, and which expired on the 1st December inst.; I hereby agree, for the sum of $125, payable on the 1st day of November next, with interest after six months, to extend the right to the said Nelson J. Warren to draw off such pine logs as are already cut, until the first of April next.                         W. STEVENSON.

    At. C. Robertson.            N. J. WARREN."

The plaintiff objected to the reading in evidence of this agreement. The defendant's counsel renewed his motion for a nonsuit, upon the following grounds, viz. 1. If the timber was

claimed to have been conveyed in perpetuity by the contract of the date of the 18th of December, 1833, the contract was not sufficient, under the statute of frauds, it not being under seal; 2. That such contract was not a sale of the timber, but merely a contract to sell; 3. That the contract of the 31st of January, 1834, if a conveyance of the timber, contained a limitation as to the time for taking it off, and was insufficient as a conveyance, it not being under seal; 4. That the agreement of date of September 26, 1836, was not a sale or assignment, but merely an agreement to sell or assign; 5. That the action should have been in the detinet; 6. That as the agreements read in evidence were not on record, the defendant was a bona fide purchaser, and no recovery could be had against him; 7. That the concluding clause in the contract of the date of 31st of Jan. 1834, was a conditional limitation or defeasance, and if the timber was not taken off within the four years, Farlin's right to it was at an end. The circuit judge denied the motion for a nonsuit, and the defendant excepted. The jury found for the plaintiff.

*Geo. A. Simmons,* for the defendant.

*E. H. Rosekrans,* for the plaintiff.

*By the Court,* PAIGE, J. It is contended that the contract of the date of the 18th of December, 1833, was not a sale of the timber to Farlin, but merely an agreement to sell. By that contract Stevenson "bargained and agreed to sell to Farlin" the pine timber on the lots therein named; Farlin to give his note for the consideration, endorsed by Miles Beach, on or before the 1st of February, 1833. The note of Farlin and Beach was given, in accordance with the contract, and accepted by Stevenson in fulfilment thereof. The word "bargained," in the contract, imports a sale *in præsenti*, not an agreement to sell by some further conveyance. I have no doubt, from the terms of this contract, that the parties intended a present interest should pass to Farlin, on his fulfilment of the stipulation or condition to give

a note endorsed by Beach for the purchase money.   Whether
an instrument shall operate to pass an immediate interest in
real or personal property, or shall rest in contract, depends upon
the intention of the parties, to be collected from the whole in-
strument.   (*Hallet* v. *Wylie*, 3 *John.* 47.   *Thornton* v. *Payne*,
5 *Id.* 77.   *Jackson* v. *Delacroix*, 2 *Wend.* 438.   10 *John.* 336.)
In 5 *John.* 77, Spencer, J., in speaking of the question whether
an instrument was a lease or an agreement for a lease, says:
" In every case decided in the English courts, where agreements'
have been adjudged not to operate by passing an interest, but
to rest in contract, there has been either an express agreement
for a further lease, or construing the agreement to be a lease
in præsenti, would work a forfeiture, or the terms have not
been fully settled and something further was to be done."
In the present case there is nothing in the contract to show
that the parties contemplated any further assurance ; the words,
at least the word " bargained," imply the conveyance of a
present interest ; the note for the purchase money is executed,
delivered and accepted ; the purchaser, Farlin, or his grantee,
enters into possession under the contract, and for several years
cuts and draws from the lots the pine timber conveyed.   Nothing
can be clearer than that this is an executed contract, and that
it was intended by the parties to pass a present interest to Far-
lin.   Nor have I any doubt that the parties to the instrument
of the date of September 26, 1836, intended that it should ope-
rate as a sale in præsenti to Warren, the plaintiff in this suit.
That agreement contemplated no further conveyance or assign-
ment.   Warren went into possession under it, and cut and drew
off the pine timber ; and it was treated by both parties as an
executed contract.

   The principal questions in the cause, are whether the con-
tract of December 18, 1833, being unsealed, was a valid con-
veyance in fee or in perpetuity, of the standing pine timber on
the lots mentioned therein ; and whether the agreements of
the dates of 31st January, 1834, and of 27th December, 1837,
limited the right of Farlin and his grantee, the plaintiff, to cut
and draw off the timber to the 1st April, 1838.

Warren *v.* Leland.

There is no doubt that growing trees are parcel of the land. Land, in its legal signification, comprehends not only the ground, soil, or earth, but also woods, water, grass, stones, buildings, fences, and the like. All these may be conveyed by the general designation of land. (1 *Cruise's Dig. tit.* 1, *ch.* 1, § 3. 1 *Denio,* 584. 1 *Hil. Ab.* 3. 1 *Barb. Sup. C. Rep.* 545.) Standing trees are therefore part and parcel of the land in which they are rooted, and as such are real property. (1 *Denio,* 554.) They pass to the heir by descent, as part of the inheritance, and not to the executor or administrator, as personal chattels do. (*Toller,* 194.) Growing trees, being parcel of the land, are within the statute of frauds, and cannot be sold or conveyed except by a deed, or conveyance in writing. (1 *Denio,* 584. 1 *Barb. Sup. C. Rep.* 545.) The revised statutes (statute of frauds,) declare that "no interest in lands" shall be created, unless by deed or conveyance in writing. Growing trees are an interest in land, and so long as they are annexed to the land, and are neither actually or in contemplation of law severed therefrom, they cannot be sold or transferred by parol. But growing trees may be severed, in law, from the land, and become personal property, without an actual severance; as where the owner of the fee in the land, by a valid deed or conveyance in writing, sells the trees to a third person, or where he sells the land, reserving the trees. In both these cases the timber and trees become chattels distinct from the soil, and go to the executor; for in construction of law they are abstracted from the earth. (*Toll. Law of Ex.* 194. 3 *Bac. Ab.* 64. *Stukely* v. *Butler, Hobart's Rep.* 300. 1 *Hil. Ab.* 6.) Although the conveyance of growing trees, being an interest in lands, must be by a deed or conveyance in writing, it does not follow that the conveyance must be under seal. A seal is necessary only to a conveyance of a freehold estate in land. Estates less than freehold may be created or assigned by deed or writing without seal. A lease for any number of years may be created or assigned by writing without seal; because it is a chattel real and not a freehold estate. (12 *John.* 73. 7 *Id.* 211. 4 *Kent's Com.* 481. 1 *R. S.* 738, § 137.)

Warren *v.* Leland.

Growing trees, when severed from the land, in law, by a valid sale in writing by the owner of the fee in the land, in prospect of an actual separation, even before an actual severance, become chattels—chattels personal—not chattels real. (*Roberts on Frauds*, 126. *Toll.* 194. 3 *Bac. Ab.* 64. *Hob. Rep.* 300. 1 *Greenl. Ev.* § 271, *note,* 3*d ed.*) Timber trees severed, in law, from the land, want the chief characteristic of a chattel real, that of immobility, the quality which a chattel real possesses in common with real estate, and which denominates it real. (*Cruise's Dig. tit.* 8, *ch.* 1, § 26.)

Chattels real, savor of the realty, as leases for years, estates by statute merchant, statute staple, elegit, or the like. They are called chattels real, because they are interests issuing out of, or annexed to real estate, of which they have one quality, viz. immobility, but want the other, viz. a sufficient legal indeterminate duration. (2 *Black. Com.* 386. *Coke Lit.* 118, *b.* 2 *Kent's Com.* § 35, *p,* 342. 1 *Hil. Ab.* 121, § 23.)

Growing trees, when they are the subject of an ownership, distinct from the ownership of the soil, are no longer deemed as annexed to the realty, but are regarded as entirely abstracted or divided therefrom. They are regarded as chattels personal merely; like growing crops of grain and vegetables, which are the annual produce of labor, and of the cultivation of the earth. (*Evans ,v. Roberts,* 5 *Barn. & Cres.* 829. 3 *Bac. Ab.* 64. *Toll.* 194. *Hob. Rep.* 300.)

If, however, standing timber after a severance, in law, are chattels real, not being a freehold estate, a writing under seal is not required to pass the title thereto.

But while growing trees are parcel of the realty, do they so much partake of the character of the latter, as to require a writing under seal from the owner of the fee, to convey an estate in perpetuity in them, distinct from the ownership of the soil? They are parcel of the realty. A conveyance of them is the conveyance of an interest in lands. They are therefore within the statute of frauds, and can only be sold or conveyed by a conveyance in writing. But is a conveyance of growing trees by the owner of the fee of the land, to a third person, the convey-

Warren *v.* Leland.

ance of a freehold estate? Simultaneous with the execution and delivery of the conveyance, the trees are severed, in law, from the earth, and become chattels personal; and the interest which passes to the grantee is not a freehold estate, but an interest in perpetuity in personal estate, which may be conveyed by a writing without seal, and even by parol. Can it then be said that such a conveyance is the conveyance of a freehold estate? I think not. For the reason that a freehold estate does not pass by the conveyance, but merely the title to a chattel.

These observations are to be deemed applicable to a conveyance of the growing trees standing on the land, at the time of the conveyance, and not to a conveyance of an interest in any future trees which may grow on the land; which might embrace an exclusive interest in the soil so far as may be necessary for the support and nourishment of the trees; and these observations ought, perhaps, also to be qualified by an application of them to a conveyance of growing trees in prospect of their separation from the soil, within a reasonable time. I have come to the conclusion, therefore, that the contract of the 18th December, 1833, although unsealed, was a valid conveyance in perpetuity of the pine timber standing on the lots mentioned therein, at the date of the contract. The term "conveyance" used in the 6th sec. of tit. 1, of the chapter of the revised statutes, relative to fraudulent conveyances, does not necessarily import a deed under seal; as the term "conveyance," as used in that chapter, embraces every instrument in writing (except a last will and testament,) by which any estate or interest in land is created, aliened, assigned, or surrendered. (2 *R. S.* 137.)

Did the agreements of the 31st of January, 1834, and of 27th of December, 1837, limit the right of Farlin and his grantees to cut and draw off the pine timber to the 1st of April, 1838?

The agreement of the 31st of January, 1834, was found among the papers of Stevenson, cancelled. Although in the hand-writing of Farlin, there is no evidence that it ever was delivered to him, or ever was an operative agreement for any purpose. It cannot, therefore, have any influence upon the rights of the parties. But if ever in existence by a delivery to,

and acceptance by, Farlin, I cannot see how it could limit or im-
pair the rights he acquired under the contract or sale of 1833.
If, under the latter contract or conveyance, he acquired, for a
valuable consideration, the title to all the pine timber then
growing on the lots mentioned therein, with the right to cut
and take off the same, within a reasonable or indefinite time,
some valid agreement on the part of Farlin, founded upon a
sufficient consideration, proceeding from Stevenson, would be
necessary to limit that right.   If the agreement of the date of
31st of January, 1834, has any influence upon the case, it is
by way of exposition of the original contract of sale by Steven-
son, showing that he understood the original contract as con-
veying a present interest to Farlin.

No objection was taken on the trial founded upon the agree-
ment of the date of the 27th of December, 1837; but on the ar-
gument of the motion for a new trial, it was contended on the
part of the defendant, that the plaintiff was estopped by that
agreement from claiming the timber, after the expiration of the
time limited by that agreement, and was estopped from show-
ing what the original contract in truth was.   Where the truth
appears by the same deed or record which would otherwise
work an estoppel, the adverse party is not concluded from tak-
ing advantage of the truth.  (*Sinclair* v. *Jackson*, 8 *Cowen*,
886.   *Coke Lit.* 352, *b.*)   Neither doth a recital conclude; be-
cause it is no direct affirmation.

If the agreement of 27th of December, 1837, is to be deemed
as referring to the contract of 1833, the case comes within the
exception that where the truth appears by the same instrument
which would otherwise work the estoppel, the adverse party
shall not be concluded from taking advantage of the truth.
By a reference to the contract of 1833, that contract was made
a part of the contract of 1837; and the plaintiff cannot, therefore,
be estopped from showing the true character of the former con-
tract, although it is misrecited by Stevenson in the agreement
of 1837.   But if the agreement of 1837 did not relate to the
contract of 1833, there is an end of the defendant's objection.
The plaintiff claims the logs in question under the contract of

sale of 1833. And it does not appear by the contract of 1837, what lots are therein intended, or whether they were the same lots upon which the logs in question were cut, or not. The plaintiff may have had other lots in the Schroon tract, and there may have been another and a different agreement in relation to them between the defendant Stevenson and Farlin; and the agreement of 1837 may have related to such other lots and agreement. An estoppel, to conclude a party, must be certain to every intent, and is not to be taken by argument or inference. (*Coke Lit.* 352, *b.*)

But the agreement of 1837 cannot, in judgment of law, be deemed to refer to the contract of sale of 1833. It refers to a purchase by Farlin from Stevenson of the right of cutting and drawing off the pine timber on certain lots in the Schroon tract, without giving the number of the lots, and recites that such right was conveyed, on the sale of his property, to the plaintiff, and that such right expired on the 1st of December, 1837. No part of this description applies to the contract of 1833; and the whole agreement may be declared void for uncertainty in not specifying the lots referred to. But if this agreement did in terms refer to the contract of 1833, I cannot see how it can affect the rights of the plaintiff under that contract. If, under that contract, the plaintiff had a reasonable or indefinite time for taking off the pine timber, he could not be divested of that right, except by some valid agreement made upon a sufficient consideration, moving not from him to Stevenson, but from Stevenson to him. And if the agreement of the 31st of January, 1834, was ever in existence, the plaintiff, by the agreement of 1837, was made to pay Stevenson $125 for precisely the same privilege which Stevenson had previously granted to Farlin, which privilege was transferred to the plaintiff by Farlin.

Under any view which may be taken, the agreement of 1837 ought not and cannot be enforced, either in equity or at law, against the plaintiff.

In *McIntyre* v. *Barnard*, (1 *Sandford's Rep.* 52,) it was conceded by the assistant vice chancellor, if the agreement in that case had omitted the habendum clause, which

limited the right of entry of the grantee upon the land, to cut and remove the pine timber, to the 1st of January, 1841, that a right of entry would have passed by the instrument for an indefinite or reasonable time for the removal of all the timber. That agreement, shorn of the habendum clause, was substantially the contract of 1833, in this case. In that case, McIntyre granted, bargained and sold to C. and D. all the pine timber standing on tract, &c. Habendum, to them, their heirs, &c. together with the right of entering upon the land until January, 1, 1841, to cut and remove the timber. It was held by the assistant vice chancellor, that this was a grant of all the pine timber which should be removed from the land by the 1st of January, 1841, and that after that day the grantees had no interest in the standing pine timber remaining on the land. Similar decisions were made upon similar timber contracts, in *Pease* v. *Gibson*, (6 *Greenl. Rep.* 61,) and in *Howard* v. *Lincoln*, (13 *Maine Rep.*, or 1 *Shepley*, 122.) I am inclined to the opinion that these decisions were correctly made, notwithstanding the case of *Stukely* v. *Butler*, (*Hob.* 300.) But however this may be, neither of these cases is applicable to the present one. As here there is no limitation in the contract of 1833, of the time for cutting and removing the timber.

The contract of 1833, was not within the recording act. It was therefore not necessary to record it, in order to protect it against a subsequent bona fide purchaser, without notice, of the lots on which the timber stood. (1 *R. S.* 756.) The interest in the trees conveyed to Farlin was not an interest in real estate, but in personal property, although the trees, before the conveyance, were parcel of the realty. Only conveyances of real estate must be recorded. But be this as it may, the assignment of 1836, from Farlin to the plaintiff, was executed and delivered after the pine timber had been severed from the land, and while it was personal property ; and it cannot be pretended that that instrument was such a conveyance as the recording act required to be recorded. A bona fide purchase by the defendant, without notice, therefore, could not protect him against that assignment.

But the case shows that the defendant purchased with full knowledge of the rights of the plaintiff in the timber; and no question could with propriety have been submitted to the jury, as to notice to the defendant of the plaintiff's interest in the timber.

The conveyance of the land, by Stevenson to the defendant, by deed of the date of 20th of December, 1843, did not convey to the defendant any right to the pine timber previously sold to Farlin. In *Austin* v. *Sawyer*, (9 *Cowen*, 39,) it was held, where the owner in fee of land sells a growing crop of wheat thereon by parol, and afterwards conveys the land, that the conveyance of the land will carry no title to the crop.

It was admitted by Stevenson, in his agreement of 1837, that the assignment of September 26, 1836, from Farlin to the plaintiff, was a conveyance *in præsenti*. For in that agreement Stevenson recites that Farlin had conveyed his right to cutting and drawing off the timber to the plaintiff.

Neither of the objections that the assignment from Farlin to the plaintiff was without consideration, and was not sufficient as an assignment within the statute of frauds, is tenable.

The assignment was founded on a sufficient consideration. And it was sufficient as a note in writing of a contract for the sale of chattels, within the statute of frauds. No note in writing of the contract for the sale of the timber to the plaintiff was necessary, within the statute of frauds; as the proof shows that the purchaser received part of the chattels sold, by cutting and removing part of the timber. (1 *R. S.* 136, § 3.)

The circuit judge decided correctly in refusing to allow the defendant to show that the plaintiff replevied more than 314 logs. The remedy of the defendant, if such was the case, was a separate action against the plaintiff. The replevin was properly brought in the cepit.

The plaintiff had the absolute property in the trees, and the right to immediate possession. He had a right at any time to enter on the land and cut and remove the trees. He may be said to have had actual possession; certainly a constructive possession. At least his general property drew to it the posses-

sion.    The defendant had neither an interest in, nor possession of, the trees.    They did not pass under the conveyance of the land to him.    His cutting and removing the trees in question was, therefore, a tortious taking, for which replevin in the cepit was properly brought.

Motion for new trial denied.

MONTGOMERY SPECIAL TERM, December, 1847.    *Paige,* Justice.