WILLIAM T. KELLAM, APPELLANT, *v.* STEPHEN McKENS-
TRY AND OTHERS, RESPONDENTS.

THE SAME *v.* RICHARD CAULDWELL, RESPONDENT.

*Bark — purchase of, while on trees — construction of terms of contract for.*

Under a contract providing for the sale of "all the hemlock bark now on the
trees standing" on certain premises, under which the purchasers agree to have
all said bark "peeled by the first day of September, 1864, piled, measured and
settled for in full;" and are to "have the right, liberty and privilege of free
ingress and egress, to enter at any time and all times upon said lot, cut, fell and
pile said bark, and to draw said bark away," etc., such purchasers are not
entitled to any bark except such as is peeled and piled before September 1,
1864.

APPEAL from a judgment in favor of the defendant, entered on
the report of a referee, in an action brought for the conversion of
certain hemlock bark.

One Corbin, having a contract for the purchase of land, entered
into an agreement with Wood and Van Benschoten, dated June,
1859. By this agreement Corbin sells and conveys to Wood
and Van Benschoten all the hemlock bark now on the trees stand-
ing and growing on the land. Wood and Van Benschoten were to
pay seventy-five cents for each cord of bark in the following man-
ner: $300 on the delivery of the presents, and $300 annually in
every year after 1859. They "further agree to have said bark all
peeled by the 1st day of September, 1864, piled and measured and
settled for in full.".

It was further agreed, that they should "have the right, liberty
and privilege of free ingress and egress to enter, at any time and
all times, upon said lot, cut, fell and pile said bark, and to draw
said bark away at any time hereafter, at the convenience of the
parties of the second part," viz., Wood and Van Benschoten.

Prior to September 1, 1864, the date on which the bark contract
was to be completed, Wood and Van Benschoten made two pay-
ments thereon of $300 each, in addition to that made at the delivery
of the contract.

On the 18th of April, 1866, the owner of the land conveyed the
same by warranty deed to said Corbin, subject to all legal and

equitable rights, if any, growing out of the bark contract claimed by Corbin to be forfeited.

In June or July, 1867, Corbin caused the hemlock trees standing on the premises to be peeled, and sold the bark thus peeled. The vendee bought in good faith and sold to the defendants, who paid for the same.

On the 19th of July, 1867, Wood, who appears to have been then the owner of any rights existing under the Wood and Van Benschoten contract, executed a bill of sale, purporting to convey to the plaintiff all the hemlock bark now peeled and lying on the premises, estimated at 340 cords, of which about 140 are said to have been peeled under Wood's direction in 1866, and about 200 under Corbin's direction in 1867, at four dollars per cord. The bill of sale also conveyed about forty other cords. Wood testified that the plaintiff paid him thereon for about forty cords.

The plaintiff now sues for the value of the bark.

*John F. Anderson*, for the appellant.

*S. W. Fullerton*, for the respondents.

LEARNED, P. J. :

The claim of the plaintiff is not very equitable, using that word in its common meaning. By the bark contract, Wood and his partner were to pay Corbin seventy-five cents per cord, and were to do all the work of peeling, piling and drawing away. As respects the bark in question, Wood has paid Corbin nothing, has done none of the work, but has assumed to sell the bark after it was peeled for four dollars per cord. The plaintiff, too, has neglected to take, or to endeavor to take, possession of the bark; he has allowed Corbin to sell it, and has then sued those who purchased in good faith, and who had paid for nearly all without notice. To recover, under such circumstances, the plaintiff should show a clear legal title.

In 1866 Corbin had become the owner of the land. His deed did not admit the validity of the contract, so that he is not estopped. This bark was then on the trees, and had not been, in fact (whatever it might have been in law), severed from the realty. The

only rights which Wood had were under the bark contract. For the referee finds, and the evidence sustains the finding, that there had been no extension.

Now, the reasonable construction of that contract is, that it was to be completed by Wood and his partner by the 1st day of September, 1864. The clause at the ending of the contract, giving rights of ingress and egress, at any time, must be taken in connection with the rest of the agreement. It could not be intended to give a right to enter and peel at all future times, when the contract expressly provided that the bark was all to be peeled, piled, measured and settled for, in full, by September 1st, 1864.

The contract, then, is to be taken as limited, at the utmost (in the absence of any extension), to such bark as Wood and his partner should peel and pile before the day when the contract expired. Whether they might not afterward have the right to draw away such as had then been peeled, piled, measured and settled for it is unnecessary to decide. The contrary seems to be held in *Boisaubin* v. *Reed* (2 Keyes, 323).

This construction has been given to a similar contract in *McIntyre* v. *Barnard* (1 Sandf. Ch., 52), approved in *Warren* v. *Leland* (2 Barb., 613); and, also, to a similar contract in *Boisaubin* v. *Reed* (2 Keyes, 323). It is a reasonable construction. The parties cannot have intended that Wood and his partner might claim a right to go on the land and peel this bark at all future times. This might prevent the owner from ever using his land. They therefore fixed the time, within which Wood and his partner should exercise their right of peeling. In the case of *McIntyre* v. *Barnard* a fixed price was paid for the timber, and paid on the sale. Yet, as a time was fixed for entering and cutting, it was held that, after that time, the grantees had no right in the timber. The present case is stronger. For the price depends upon the measurement of the bark when peeled. The owner cannot compel any payment until the bark shall be peeled, piled and measured. Unless, then, the rights of Wood and his partner ceased on the 1st of September, 1864, Corbin would be in a situation where he himself could not safely peel the bark, and could claim nothing from Wood and his partner, unless they chose to act. Corbin, therefore, has not, in fact, been paid for all the bark on the premises; as the

seller had been paid in the case of *McIntyre* v. *Barnard*, and apparently, also, in the case of *Boisaubin* v. *Reed*.

In *Warren* v. *Leland* it is said that if no time were provided for the removal of the timber, a reasonable time would be implied. Here, the parties have themselves determined the time within which the bark is to be peeled, piled, measured and settled for ; and the question is, whether the following clause in the contract is to be construed to mean that no period was limited, or whether the words " any time and all time " are to be construed in subordination to the period limited by the preceding clause.

We think they are to be so construed ; and that the judgment should be affirmed, with costs.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment affirmed, with costs.