## THE LACUSTRINE FERTILIZER COMPANY, APPELLANT, *v.* LAKE GUANO AND SHELL FERTILIZER COMPANY AND SILAS M. STILWELL AND SILAS M. STILWELL, JR., RESPONDENTS.

*Piles of marl on land — when treated as personal property — exception of, in a conveyance of land — when the right to remove them ceases — when the party conveying is estopped from subsequently claiming them.*

In 1856, one Torrey was the owner of a tract of land, through which a cutting had been made, and upon the sides of which had been thrown up large piles of "marl," a substance valuable for its fertilizing qualities. In 1865 Torrey sold the land to one Spalding, excepting from the conveyance the said beds and deposits of marl, the conveyance providing "that the said marl may remain on said land for the period of ten years from the date of this indenture, and that the party of the first part (meaning the said Torrey) may, at any time, within the said ten years, remove a part or the whole of the said marl." On July 23, 1866, Torrey made an absolute conveyance of the marl to one Barnum, "to have and to hold to the said Henry A. Barnum, his heirs and assigns, executors and administrators forever," the instrument containing a covenant of warranty " against all and every person whomsoever." Barnum took possession of the marl, removed portions thereof and subsequently conveyed the remainder thereof to the plaintiff's grantor. In January, 1869, Torrey again became the owner in fee of all the land theretofore conveyed to Spalding, and held the same until his death, in December of that year. Thereafter, the defendant Stilwell, knowing of the existence of the Barnum title to the marl, purchased the land on which it was piled from the heirs and devisees of Torrey, and, thereafter, conveyed the same to the defendant corporation who, at the time of the commencement of this action, held possession of and claimed to own the land and the marl thereon. In an action by the plaintiff to recover the marl, with damages for its wrongful detention, *held*

(1.) That as between Torrey and his grantees the piles of marl were to be treated as personal property.

(2.) That as between Torrey and Spalding, the right to remove the marl would have ceased at the expiration of ten years; after which the marl would have vested in Spalding, as though never excepted from the deed.

(3.) That the fee to the land having re-vested in Torrey, he, his heirs and assigns were estopped from claiming the marl, as against Barnum and his assigns, by his conveyance and the covenant of warranty therein contained.

(4.) That a complaint alleging the above mentioned facts stated a cause of action.

(5.) That if the defendant corporation claimed as a *bona fide* purchaser the facts establishing its rights should be averred, and would not, on demurrer, be presumed to exist.

APPEAL from a judgment, entered on an order sustaining separate demurrers to the complaint, interposed by the defendants.

*F. L. Manning & H. S. Bennett*, for the appellant. This marl was personal property, and was treated as such. (*Smith* v. *Benson*, 1 Hill, 176; *Mott* v. *Comstock*, 1 Comst., 564; *Goddard* v. *Gould*, 14 Barb., 662 ; Hillard on Real Property, chap. 1, § 1828, cases there cited ; *Ford* v. *Cobb*, 20 N. Y., 344; *Sheldon* v. *Edward*, 35 id., 279; *McIntire* v. *Barnard*, 1 Sand. Chan., 52; *Gillespie* v. *Stevens*, 13 Gray, 146; Ewell on Fixtures, 45; *Bank of Lansingburgh* v. *Cary*, 1 Barb., 542 [1847] ; *Davis* v. *Emery*, 61 Me., 140 [1870] ; *Hoit* v. *Stratton Mills*, 54 N. H., 110 [1873] ; *Sterling* v. *Baldwin*, 42 Vt., 306, 310 [1869] ; *Shaw* v. *Carboy*, 13 Allen, 462 [1866] ; *Nelson* v. *Nelson*, 6 Gray, 385 [1856] ; *Sheldon* v. *Edwards*, 35 N. Y., 279; *Patti* v. *Cromwell*, 40 id., 287 ; *Burk* v. *Hollis*, 98 Mass., 55 [1867] ; *French et al.* v. *Freeman*, 43 Vt., 93.) If the conveyance from Torrey to Barnum was valid and binding upon those parties, it is equally valid and binding upon the parties to this action. If Torrey, while living, could not have avoided it, then his heirs and devisees are equally powerless to avoid it. (*Jackson* v. *Bull*, 1 Johns. Cas., 81; *Jackson* v. *Murray*, 12 Johns., 201; *Van Horn* v. *Crane*, 1 Paige, 405; *Jackson* v. *Howder*, 4 Johns., 202; *Jackson* v. *Bush*, 10 id., 223; *Jackson* v. *Humrun*, 10 id., 292; *Mosely* v. *Mosely*, 15 N. Y., 334.)

*John Cummins, Josiah T. Miller* and *H. C. Gardiner*, for the respondents. This excavated soil or marl was part and parcel of Torrey's land. It was land. (Bouvier's Law Dictionary ; 1 Washburn on Real Property, 3; *Blewitt* v. *Tregonning*, 3 Adolphus & Ellis, 554; 30 Eng. Com. Law, 260; *Dearden* v. *Evans*, 5 Meeson & Welsby, 11; *Wintermute* v. *Light*, 46 Barb., 278: Tyler on Fixtures, 104, 105 ; *Miller* v. *Plumb*, 6 Cow., 665 ; *Snedeker* v. *Warring*, 12 N. Y., 170; *Goodrich* v. *Jones*, 2 Hill, 142; *Middlebrook* v. *Corwin*, 15 Wend., 169; *Bishop* v. *Bishop*, 12 N. Y., 123; *Evans* v. *Turnbull*, 2 Johns., 313; 2 Kent's Com., 360, 361; *Fryatt* v. *The Sullivan Company*, 5 Hill, 116–118; affirmed, 7 Hill, 529; *Brackett* v. *Goddard*, 54 Maine, 309.) To make soil personal property, it must be clearly and distinctly separated from the land by the owner, with that intent, at the time of separation. (*Lampton* v. *Preston*, 1 J. J. Marsh [Ky.],

454; Tyler on Fixtures, 115; Wash. on Easements [3d. ed.], 409; 3 Wash. on Real Prop. [3d. ed.], 59.) An exception in a deed is always to be taken most favorable for the grantee. (*Johnson v. Hudson*, 3 Johns., 375; *Jackson v. Gardner*, 8 id., 394; 5 N. Y., 33–40; *Ives v. Van Auken*, 34 Barb., 566.) That the exception, as an exception, was void for uncertainty. (3 Wash. on Real Prop. [3d. ed.], 344; 37, side page 629; id., 345, § 38; 3 Wash., 350, § 39; id., 354; 1 Bouvier's Dictionary; 2 id.) Torrey, on the 23d of July, 1866, had nothing to sell to Barnum, for the reason that he had conveyed the land to Spalding in fee absolute, on the 6th day of January, 1865, and that the nature of the interest reserved by him, through the exception, was that of a license, and nothing more. (3 Wash. on Real Prop. [3d. ed.], 376; 1 id., 542; 3 id., 376; *McIntyre v. Bernard*, 1 Sandf. Ch., 52; see, also, cases there cited; *Rich v. Zeildorf*, 22 Wis., 519; *Reed v. Merrifield*, 10 Metcalf's Rep., 159.)

TALCOTT, P. J.:

This is an appeal by the plaintiff from a judgment sustaining the separate demurrers of The Lake Guano, etc., Company and Silas M. Stilwell to the complaint of the plaintiff, which demurrers were upon the sole ground that the complaint does not state facts sufficient to constitute a cause of action.

The complaint is for the conversion of certain quantities or piles of "marl" situated and located upon certain lands in the county of Seneca, to which the defendants, The Lake Guano, etc., Company have acquired the title by means of certain conveyances thereof from the heirs at law of one Royal U. Torrey. The said Royal U. Torrey was the owner of the land in which the said piles of "marl" are located. In the year 1856, the State of New York, for the purpose of making a new cut for the Canandaigua outlet, had entered upon the said lands of Torrey and excavated across them a channel for the said new cut, and in the course of such excavation had thrown up on either bank of the said new cut certain piles of "marl," which were dug out of the soil of Torrey's said land along the course of the said excavation.

And the complaint avers that the said piles of "marl" had, after their excavation and before the 6th day of January, 1865,

been lying upon the land of Torrey, in conspicuous heaps or piles, and the marl was, in its nature and color, clearly distinguishable from the surface soil on which it rested, and was well known to have certain fertilizing properties which gave it a value addititional to and distinct from the general soil, and, in consequence of those properties, had been extensively used by farmers, and dealt in and transported as an article of commerce. That on the 6th of January. 1865, the said Royal U. Torrey, conveyed the land upon which those piles of marl were so located to one Henry C. Spalding, by deed, containing a conditional exception or reservation, in the following words, viz. : " And also excepting the beds and deposits of marl lying on both banks of the new cut for the Canandaigua river, which passes through said lands, and it is an express stipulation and agreement between the parties hereto *that said marl may remain on said land for the period of ten years from the date of this indenture*, and that the party of the first part (meaning the said Torrey) *may at any time, within the said ten years, remove a part or the whole of the said marl.*"

After the conveyance to Spalding, and on the 23d day of July, 1866, the said Torrey, by an instrument in writing under his hand and seal, made an absolute conveyance of the said marl to Henry A. Barnum, "his heirs and assigns, executors and administrators," which marl was in and by the said instrument described as follows : " All that certain bed or beds of marl in the town of Tyre, Seneca county, and State of New York, on Great Lot 25, which was excavated by the State of New York about the year 1856, for the purpose of changing the channel of the Canandaigua outlet or river from its natural course or channel, near the Erie canal aqueduct, over the Seneca river."

The said conveyance was made " to have and to hold to the said Henry A. Barnum, his heirs and assigns, executors and administrators forever." The said instrument also contained an express covenant on the part of the said Torrey for himself, his heirs, assigns, executors and administrators, to warrant and defend, to the said Henry A. Barnum his heirs, assigns, executors and administrators forever, the sale of the said marl made to said Barnum, " against all and every persons whomsoever."

The complaint alleges notice to Stilwell of Barnum's title to the

marl, and that Barnum took possession of said piles of marl and removed a portion thereof, and from time to time thereafter negotiated for the sale of divers portions of said marl, and remained in possession of said marl until after the conveyances thereof to the defendants, the Stilwells, hereinafter mentioned.

That the said Royal U. Torrey, about January, 1869, again became the owner in fee of all the aforesaid land and realty which had been conveyed to the said Spalding, and so held the same until his death in December, 1869.

That the defendants Stilwell, well knowing the existence of the title of Barnum, and learning the value of the said marl, secretly obtained from the heirs and devisees of said Royal U. Torrey, after his death, conveyances of the land on which the said piles of marl were located, and took possession of said piles of marl and excluded the said Barnum therefrom and from possession thereof, or access thereto, and subsequently organized the corporation known as the "Lake Guano and Shell Fertilizer Company," and thereupon conveyed the said tract of land to the said corporation, which now holds possession of the piles of marl located thereon, and "wrongfully detains the same from the plaintiff."

That the plaintiff, The Lacustrine Company, before the commencement of the suit, by virtue of conveyances from Barnum and his assignees, for a valuable consideration, acquired the title to all the said piles of marl, and thereupon became and now is the owner of the said marl and entitled to the immediate possession thereof. That since the organization of the said Lake Guano and Shell Company the plaintiff has demanded possession of the said piles of marl, and previous to the organization of said company demanded the same from said Stilwells, "but all of the said defendants have refused and still refuse to allow the plaintiff the possession thereof or access thereto," and that by reason of the unlawful seizure and detention the plaintiff has been and is unable to take possession of its said property, and transport and market the same — and has been unable to market the same to the damage of the plaintiff of $20,000. That the said piles of marl contain about 100,000 tons, each ton being worth five dollars. And the complaint demands judgment against the defendants for the possession of the marl, or the value thereof, in

case a delivery cannot be had, with $20,000 damages for the detention thereof.

All the foregoing facts are alleged in the complaint, and it seems to set forth, with some superfluous matter, a good cause of action, which was formerly known as replevin in the *detinet*.

The marl in question was a part of the realty, and except for the reservation contained in the deed to Spalding, would have passed to him by the conveyance from Torrey.

The piles of marl, which are the subject of the action, with their alleged condition, situation and qualities, together with the manner in which they were dealt with and concerning by Torrey and his grantees, show that they were treated by them as personal property, and were considered to be severed from the realty, and as between the parties to those contracts and their heirs the marl was to be treated as personal property severed from the real estate, and passing by any conveyance sufficient to pass an interest in personal property. As, in many cases timber, trees, and even buildings, as between the parties to such contracts, are to be treated as severed from the realty, and to become personalty *pro hac vice.* (See cases hereinafter referred to.) But under the limitation of the right of removal contained in the deed to Spalding, the exception of the marl, as between Torrey and his heirs and devisees, and Spalding would probably have terminated, at the expiration of ten years, from the date of the deed to Spalding, who, at the expiration of that time, would have taken the marl as though the same had been covered by his deed and not excepted therefrom, and the same would have vested in his heirs and assigns. (See *Warren* v. *Leland*, 2 Barb., 613; *Pease* v. *Gibson*, 6 Greenl., 81; *Howard* v. *Lincoln*, 13 Maine, 122; *McIntyre* v. *Barnard*, 1 Sandf. Chy. Rep., 52; *Holton* v. *Goodrich*, 35 Vt., 19; *Reed* v. *Merrifield*, 10 Metc., 159; *Boisaubin* v. *Reed*, 2 Keyes, 323; *Kellum* v. *McKinstry*, 69 N. Y., 264.)

But the deed to Spalding is alleged to have been made on the 6th of January, 1865, and the complaint alleges that in or about January, 1869, Torrey again became the owner, in fee, of the aforesaid lands and realty, except the marl, which he had before conveyed to Spalding. That is, before the ten years had expired, so that Spalding would not have acquired any rights by reason

of the limitation of the time during which the exception could operate. How Torrey became repossessed of the title is not stated, and probably was not important, as it is alleged that he became repossessed of the title in fee.

Torrey had conveyed the marl situated on each side of the new cut, on the surface of the ground to Barnum in perpetuity, and without any limitation of the time within which the same might be removed by Barnum or his assigns, and had conveyed with an express warranty of the title; and whatever rights would have resulted to Spalding in consequence of the neglect to remove the marl within ten years, had Spalding so long remained the owner of the land and real estate, when Torrey, within the ten years, became reinvested with the title to the land, on the surface of which the marl had been deposited, from that time, Torrey and his heirs would have been estopped from claiming the marl in opposition to his covenant of warranty.

It seems that, in this case, on a motion to dissolve the injunction, Judge WESTBROOK delivered an opinion, reported in 51 How., 152. Judge WESTBROOK dissolved the injunction as appears from his opinion, on the effect of the exception in the deed from Torrey to Spalding, and upon the ground that the marl not having been removed within the ten years, the right to remove the same had ceased, without noticing the fact that Torrey had within the ten years become reinvested with the title in fee, or alluding to the effect of Torrey's covenant of warranty in the conveyance to Barnum.

We have been furnished with a copy of an order of the General Term of the first department, whereby the decision of Judge WESTBROOK was affirmed, but without any opinion by the first department. It would seem from the statement of the counsel for the plaintiff that the point of the reinvestment of the fee of the land in Torrey was not called to the attention of Judge WESTBROOK, and we infer that the same was the case in regard to the argument of the appeal from his decision before the General Term of the first department.

However that may have been, on the argument of the appeal, in this case, we have been furnished with no sufficient reason for denying the applicability of the doctrine of estoppel, so far as the

heirs and devisees of Torrey are concerned, and if the defendant's claim that they purchased the land *bona fide* for a valuable consideration, and without notice of the severance of the marl from the realty, or of the plaintiff's title, such fact is to be averred by them, and is not to be presumed on demurrer.

If the conveyance of the marl to Barnum, being in perpetuity and without any condition as to the time of removal, involved the right to occupy so much of the land as is covered by the piles of marl forever, that right results from the contract of the parties, and cannot be remedied by the court.

It is claimed by the respondents that the contract between Torrey and Barnum was a mere executory contract for the sale and purchase of the marl, but as set forth in the complaint it purports to be an executed contract of bargain and sale.

As the demurrers are upon the sole ground that the complaint does not set forth facts sufficient to show a cause of action, we have not considered the formal defects, such as the want of a sufficient description of the piles of marl, etc. If the complaint be defective in *formality*, the defect is not reached by this demurrer.

As will be seen in the view we have taken of this case, we consider the averments concerning the exception in the deed from Torrey to Spalding as mere surplusage in the complaint, and in no wise material to the determination of the rights of those parties.

The judgment sustaining the demurrer to the complaint is reversed, and the demurrer overruled, and the defendants have leave to answer within twenty days after service of a copy of this order, on payment of costs of demurrer and appeal.

Smith and Hardin, JJ., concurred.

Ordered accordingly.