THE BANK OF LANSINGBURGH *vs.* CRARY and others.

COGGILL and others *vs.* CRARY and another.

REID *vs.* CRARY.

SMITH *vs.* CRARY and others.

FITCH *vs.* CRARY.

Growing trees, fruit, and grass, being parcel of the land, are within the statute of frauds; and until severed from the land, either actually or in contemplation of law, they cannot be conveyed, or contracted to be conveyed, by parol, nor taken in execution as chattels.

The defendant in an execution cannot, by parol, authorize the levy of the execution upon growing trees, fruit or grass growing on his land, before severance. And if he, by parol, turns out such growing trees, fruit or grass to the sheriff, on the execution, and the sheriff, by virtue of such authority, levies on the same, the levy will be void.

If a sheriff, after making a levy on an execution in his hands, receives other executions against the same defendant, the receiving of such executions operates as a constructive levy under them on the property levied upon under the first execution.

Whether a chattel mortgage can be given on growing trees, fruit or grass, while parcels of the real estate; and whether such mortgage can be given on the produce of real estate not in actual existence at the time of the execution of the mortgage? *Quære.*

Growing trees or grass may be severed, in law, from the land, and become personal property without an actual severance; as where the owner in fee of the land, by a valid conveyance in writing, sells the trees or grass to a third person; or where he sells the land, reserving the trees or grass.

A mortgage of growing trees or grass, given by the owner in fee of the land of which they are parcel, does not work a severance in law of the trees or grass from the land, until the mortgage becomes absolute by the non-performance of the conditions of the mortgage.

Until a chattel mortgage becomes absolute, by the non-performance of the conditions of the mortgage, the mortgagor has such an interest in the chattels mortgaged, as is liable to levy and sale on execution; and the purchaser at the sale on execution takes the property subject to the mortgage, and acquires with it the right to redeem it by the payment of the amount due on the mortgage.

EXECUTIONS were issued on the judgments recovered in the above suits, to the sheriff of the county of Washington. The execution, in the cause first above mentioned, was received by

the sheriff on the 14th of April, 1847. The executions, in the other causes, were received by the sheriff at the following times, viz.: in the cause secondly above mentioned, on the 28th of April, 1847; in the cause thirdly above mentioned, on the 18th of June, 1847; in the cause fourthly above mentioned, on the 21st of June, 1847; in the cause fifthly above mentioned, on the 28th of July, 1847. The defendant John Crary gave John Savage a chattel mortgage, on several articles of personal property, dated October 26, 1846, to secure the payment of $355,49, on the 26th of October, 1847. Crary also gave, to John Savage, another chattel mortgage, on other articles of personal property, dated April 20, 1847, to secure the payment of $2000 within one year from the date; and also a further chattel mortgage, dated May 11, 1847, to secure the payment, on the 1st of December, 1847, of $300, and of his previous indebtedness to John Savage. This last chattel mortgage was given by Crary on various articles of personal property, and also upon all the produce of his real estate; consisting of 150 acres of meadow, and of growing crops of corn, oats, rye, &c. These chattel mortgages were duly filed, in the office of the town clerk. The sheriff of Washington county, on the 18th of May, 1847, called on the defendant Crary, with the execution in the first above entitled cause, and Crary turned out to him, on such execution, the property specified in the mortgages; and the sheriff then levied thereon. The sheriff, on receiving the execution, in the suit fifthly above mentioned, was requested, by the attorney of Fitch, to levy on the hay, on the defendant's real estate, then cut, amounting to ninety-nine tons; being the meadow or grass aforesaid levied on under the first execution. The Fitch execution was at this time the only execution in life in the sheriff's hands. The sheriff inventoried the hay, the produce of said real estate, at ninety-nine tons. It is admitted by the parties, that if such hay was not levied upon, under the first execution, it was levied upon, by taking such inventory, at the time last mentioned. The sheriff, between the 12th and 16th days of October, 1847, sold, under the said executions, all the property levied upon by him, including the hay, for about $2400. The

The Bank of Lansingburgh v. Crary.

hay sold for about $300. There was due at the time of the sale, on the mortgages of Judge Savage, about the sum of $732. The proceeds of the sale, exclusive of the hay, were more than sufficient to satisfy the mortgages and the first judgment.

On this state of facts, the following questions were submitted by the parties for decision, viz. :

1. Whether the levy by the sheriff, on the 18th of May, on the meadow, then being grass growing, turned out by Crary on the first execution, was valid and operative as against the actual levy on the hay, being the grass aforesaid cut, made under the Fitch execution. 2. Whether the proceeds of the sale of such hay should be applied on the Reid execution, or on the Fitch execution. Or, 3. Whether the mortgagee had the right to apply the proceeds of the hay in payment of his mortgage.

*A. L. McDougall,* for Josephus Fitch and H. Coggill, &c.

*James Gibson,* for Thomas Reid and John Savage.

PAIGE, J. The facts of this case present the question, whether grass, growing on land, can be levied upon as a chattel, under an execution against the owner of the land, when it is turned out on the execution by the defendant, or when such levy is made by and with the parol consent of such defendant.

A distinction exists between growing crops of grain and vegetables, such as wheat, corn and potatoes, the annual produce of labor and of the cultivation of the earth, and growing trees, fruit and grass, the natural produce of the earth, which grow spontaneously and without cultivation. The former are chattels ; they go to the executor, and may be taken in execution as chattels. (*Evans* v. *Roberts, Bayley, J. Littledale, J. 5 Barn. & Cress.* 829.) But growing trees, fruit and grass, are parcel of the land, and descend with it to the heir ; and cannot be seized as chattels, under an execution, until severed from the land. (*Toll. Law of Ex'rs,* 192, 3, 4. 3 *Bac. Abr.* 64. 2 *Black. Com.* 122, 3. *Evans* v. *Roberts,* 5 *Barn. &*

The Bank of Lansingburgh *v.* Crary.

*Cress.* 829. *Tidd's Pr.* 913, 911. 2 *John.* 418. 9 *Cowen*, 39. *Jones* v. *Flint,* 10 *Adol. & Ellis,* 753.)

Growing trees, fruit and grass, being parcel of the land, are within the statute of frauds, and cannot be sold or conveyed by parol. This question was carefully examined and deliberately settled, in the recent case of *Green* v. *Armstrong*, (1 *Denio*, 550.) In that case, it was decided, that an agreement, for the sale of growing trees, was a contract for the sale of an interest in lands, and to be valid, must be in writing. And it was there held, that the same rule applied to growing fruit or grass, and to all other natural products of the earth, which grow spontaneously, without yearly cultivation. The same principle was held in *Crosby* v. *Wadsworth*, (6 *East*, 602;) *Evans* v. *Roberts*, (5 *Barn. & Cress.* 829;) *Jones* v. *Flint*, (10 *Ad. & Ellis*, 753;) *Teal* v. *Auty*, (2 *Brod. & Bing.* 99.)

Upon the principle of these cases, growing grass is a part of the land, and cannot be transferred by parol; nor can a valid contract for the sale of it be made, unless the contract be in writing. The revised statutes (statute of frauds) declare, that " no interest in lands " shall be created, unless by deed of conveyance in writing; and that every contract for the sale of " any interest in lands," shall be void, unless the contract be in writing. (2 *R. S.* 134, §§ 6, 8.) Growing grass is an interest in lands, and so long as it remains annexed to the land, and is neither actually, nor in contemplation of law, severed therefrom, it cannot be sold or transferred by parol; nor can any valid agreement for the sale of it be made, unless the agreement be in writing. The growing grass, in this case, on the 18th of May, when it was turned out by Crary on the first execution, was a part of the land owned by him; and was therefore an interest in land, and could not be transferred by him to the sheriff, by parol; nor could Crary, then, by parol, make any valid agreement with the sheriff, authorizing him to seize and sell the same, on the execution in his hands. Crary's turning out the grass to the sheriff, on the execution, was a mere nullity. It transferred to the sheriff no right, and conferred on him no authority to levy on the same, under the execution. And the

sheriff, without some such right or authority, derived from the defendant Crary, had no power to levy on the growing grass; it being real property, by virtue of his execution, as a chattel. The sheriff's levy, therefore, upon this grass, on the 18th of May, was a nullity, and totally inoperative as against the subsequent levy made upon it under the Fitch execution, after it had been actually severed from the land.

There does not appear to have been any actual levy made by virtue of the executions in the Coggill and Reid suits, on the property levied upon under the first execution. But the receiving of these executions, by the sheriff, after his levy on the first execution, was a constructive levy of such executions, on the property levied upon, under the first execution. (5 *Cowen*, 390. 1 *Hill*, 559. 17 *John*. 116. 11 *Wend*. 548.) But as the levy under the first execution upon the growing grass was a nullity, there was no valid levy of the second and third executions on such grass. No part of the proceeds of the sale of the hay can therefore be applied, on these executions. Independent of the mortgages, therefore, I am prepared to say, that, in my judgment, the whole proceeds of the sale of the hay should be applied on the Fitch execution.

The question, whether the mortgagee has the right to apply the proceeds of the hay, in payment of his third mortgage, in exoneration of the proceeds of the sale of the other personal property, included in such mortgage, in order to allow the last mentioned proceeds to be applied on the Coggill and Reid executions, remains to be considered.

It appears that the whole sum due on the mortgages of Judge Savage, at the time of the sale, was $732; that the amount of the sales of the personal property included in the mortgages, exclusive of the hay, was $2100; which, after satisfying all the mortgages, would leave $1368 to be applied on the executions. The statement of facts, agreed upon by the parties, does not mention the amount of the sales of the property included in the third mortgage, exclusive of the hay; nor whether any of the grass, intended to be mortgaged, was in actual existence, at the date of the third mortgage. I think, however, I have a right

The Bank of Lansingburgh *v.* Crary.

to infer, that the sales of the property included in the third mortgage, exclusive of the hay, were sufficient, or more than sufficient, to satisfy such mortgage.

Conceding that a valid chattel mortgage, being in writing, can be given upon parcels of real estate, such as growing trees and grass, and waiving the consideration of the question, whether a chattel mortgage can be given, upon produce of land, not in actual existence at the time of the execution of the mortgage, I will proceed to consider what effect the third mortgage has, upon the question of severance in law from the land, of the growing grass intended to be mortgaged, so as to change it from real to personal property, and thereby to make it a subject of levy, under the first execution, as a chattel.

Growing trees or grass may be severed in law from the land, and become personal property, without an actual severance; as where the owner of the fee in the land, by a valid deed, or conveyance in writing, sells the trees or grass to a third person; or where he sells the land, reserving the timber, trees or grass. In both these cases, the timber and trees become chattels distinct from the soil, and go to the executor. For in contemplation of law they are abstracted from the earth. (*Toll. Law of Ex'rs,* 194. 3 *Bac. Abr.* 64.) And whenever property goes to the executor, as a chattel, it can be taken and sold, on an execution, as a chattel. (*Evans* v. *Roberts,* 5 *Barn. & Cress.* 829, *Bayley, J. Littledale, J.*)

In this case, the mortgage, at the time of the levies and sales, had not become absolute, by the failure of the mortgagor to perform the condition of the mortgage. The mortgage money did not become due, until the 1st of December, 1847. At the time of both levies, as well as of the sale, Crary was the owner of the fee of the land, and also the legal owner of the growing grass, and had the right of possession of the grass, and an interest therein, until its forfeiture by his non-performance of the condition of the mortgage. (7 *Wend.* 135.  17 *Id.* 53.  10 *Id.* 320.  8 *Id.* 339.) The ownership of the grass and of the land thus both continued in Crary, and were not separated. The grass was not therefore, by the mortgage, severed in law from

the freehold, and converted into personalty. Whenever the right to growing trees or grass and the fee of the land are in the same person, the trees and grass are parcel of the inheritance, and are real property. And this is so, even where they have been separated by a sale, but have subsequently become reunited, in the same person. (*Toller's Law of Executors*, 195.) So, if the owner of the trees or grass is only owner of the reversion in the land, after an estate for years or life, the trees or grass are parcel of the inheritance, so long as they are annexed to the land, and they descend with it to the heir. (*Idem*, 195.)

After the forfeiture of the condition of the mortgage, as the mortgagee would, by the failure of the mortgagor to perform such condition, have acquired, by the mortgage, an absolute title to the mortgaged property, there would undoubtedly have been a severance, in contemplation of law, of the grass from the land, and it would have then become personal property—the porsonal property, however, of the mortgagee; not of the mortgagor. (9 *Wend.* 80. 1 *Hill*, 473. 7 *Cowen*, 290. 8 *John.* 76. *Brown* v. *Bement*, 12 *Wend.* 61. *Toller*, 194.)

Has the mortgagee the right to apply the proceeds of the hay, in payment of his third mortgage, in exoneration of the proceeds of the sale of the other personal property included in that mortgage; or has Reid any legal or equitable right to have such application made, to the end that the proceeds of the other property may be applied on his execution? It seems to me, that, inasmuch as the proceeds of the sale of the other property on the executions were sufficient to satisfy the third mortgage, (which fact I have assumed) the mortgagee has no interest in this question; he having been fully paid out of the other property, or there being sufficient of such property to pay him, without touching the proceeds of the hay. The application of the proceeds of the hay is therefore a question which alone affects Reid or Coggill, and Fitch. From what has already been said, it appears that Reid has no lien on the proceeds of the hay, his levy on the same, when in the condition of growing grass, being invalid. Fitch's execution is the only one

which was legally levied on this property, and if the mortgage was out of the way, there could be no doubt as to his right to have the entire proceeds applied on his execution. And as between the mortgagee and him, without reference to the rights of Reid or Coggill, Fitch could compel the application of the proceeds of the other property included in the third mortgage, in payment of such mortgage, so as to leave the proceeds of the hay to be wholly applied on his execution. This right of Fitch is founded upon the well settled principle of equity, that, where one creditor has a right to go upon two funds, and a second creditor upon one of them, belonging to the same debtor, the former may be compelled to apply first to the fund not reached by the second creditor, so that both may be paid. (4 *John. Ch. Rep.* 17. 17 *Ves.* 520. 1 *Paige*, 185. 19 *John.* 486. 7 *John. Ch. Rep.* 183.) Doubtless the same rule would apply to Reid and the mortgagee, if the rights of Fitch were not involved.

I am now considering the question upon the assumption that the mortgagee has the application of the moneys produced by the sales on the executions; and that the moneys are deemed to be in his hands, or in the hands of the sheriff, as his agent. This seems to be assumed by the parties, in the terms of the question submitted by them, for decision. But, it appears to me, that the mortgagee can, under no circumstances, have any control over the moneys in the hands of the sheriff, nor any direction of their application, any farther than to require, that his mortgage debts be paid out of some of the portions of the mortgaged property. If the mortgaged property, which was levied upon, had been sold in the ordinary manner, and which, perhaps, was the only way in which it could have been regularly sold; that is, subject to the incumbrance of the mortgages; the purchaser would have acquired the title to the property subject to these mortgages, and the mortgagee would have had no interest whatever in the moneys produced by the sale under the executions. His remedy in that case, when his mortgage debts became due, would have been against the property in the hands of the purchaser, under the executions— a remedy to take and sell the property. Here the mortgaged

The Bank of Lansingburgh *v.* Crary.

property not being forfeited by the non-payment of the mortgage debts, such debts not falling due until after the sale under the executions, Crary, the mortgagor, had at the time of the sale a right to the possession, and the absolute ownership of such property, subject to the mortgages; which was such an interest as was liable to be sold on execution; and the purchaser, at the execution sale, if the sale was in the ordinary manner, acquired this interest, and took the property subject to the incumbrance, and with it, acquired the right to redeem the same, by payment of the amount due on the mortgages. (*Bailey* v. *Burton*, 8 *Wend.* 339, on appeal. *Otis* v. *Wood*, 3 *Id.* 498. 17 *Id.* 53. 10 *Id.* 320. 7 *Id.* 135.)

If the mortgaged property had been sold under the executions, subject to the mortgages, as real property which is subject to mortgages is sold on execution, no question could have been raised, in this case, as to the right of Fitch to the application of the whole proceeds of the hay on his execution. The property subject to the levy of the three first executions would have been sold by the sheriff, under those executions, or under all the executions, if the levy of all extended to it; and the proceeds would have been applied on such executions, according to the priorities of their respective levies. And the hay would have been sold only on the Fitch execution, as that execution was the only one which was levied on it, and consequently the whole proceeds of the hay must have been applied on that execution. And, neither in law or equity, would the plaintiffs, in the other executions, have had any right to the application of any part of such proceeds on their executions. And, if the mortgaged property was in fact sold by the sheriff under the executions, in pursuance of some agreement or arrangement entered into between all the parties interested, that he should, out of the proceeds of the sale, first pay the amounts due on the mortgages, and then should apply the balance on the executions, according to the priorities of their respective liens on the property, I think such agreement or arrangement ought not to deprive Fitch of any rights which he would have possessed had the sale been conducted in the usual and regular manner. The

statement of the facts submitted is silent as to any such agreement or arrangement; and, in the absence of any evidence on the subject, it may properly be inferred that there was no such agreement or arrangement, and that the sheriff proceeded to sell, and did sell, the mortgagor's interest in the mortgaged property, subject to the incumbrance of the mortgage. The mortgaged property was sold under the executions, and not under the mortgages, and only the interest of the mortgagor was or could have been sold under such executions. The sale could not affect or impair the rights of the mortgagee. His mortgages, notwithstanding the sale, remained liens on the property, and would continue liens on the property in the hands of the purchaser, at the execution sales. The proceeds of the sale go into the hands of the sheriff to be applied by him on the executions, according to the priorities of their liens. The mortgagee can therefore have no right to direct what moneys, produced by the sale in this case, should be applied in payment of his mortgages, he not being legally entitled to any part of these moneys.

If no levy had been made upon the hay, under the Fitch execution, the hay could not have been sold, and of course no moneys arising from its sale could have been applied on any of the executions.

I have not deemed it necessary, for the decision of this motion, to inquire whether a chattel mortgage can be given upon produce of land, not in actual existence, at the time of the execution of the mortgage, and in connection with that question, to ascertain whether the vegetation of the meadow land, included in the third mortgage, had started on the 11th of May, when that mortgage was executed, so as to furnish any growing grass, in actual existence, upon which the mortgage could operate. I strongly incline to the opinion that a chattel mortgage can only operate on property in actual existence at the time of its execution; that it cannot be given on the future products of real estate; and that if given one day, or one week, before the product of the land comes into existence, it is as inoperative as if the chattel mortgage had been given on a crop

of grass or grain, one, two, or three years previous to its production. ( *Waddington* v. *Bristow,* 2 *Bos. & Pul.* 4/2. *Evans* v. *Roberts,* 5 *Bar. & Cress.* 829.)

A rule or order must be entered, directing the sheriff of the county of Washington to apply the money arising from the sale of the hay in question on the execution in favor of Josephus Fitch against John Crary.

St. Lawrence General Term, October, 1847.　*Cady, Paige, Willard and Hand,* Justices.