## CUDWORTH *v.* SCOTT.

In an action of trespass, for taking and carrying away certain hay, grain, and straw, the product of the farm of one K., during the year 1859, it appeared that the rye and rye straw were from the sowing of the fall of 1858; that in January, 1859, K. mortgaged to the plaintiff "all the hay and grain, of every kind, that grows on the farm on which I now live the present year;" and that the defendant, as a deputy sheriff, attached said property October 20, 1859, while in the barn of said K., and sold the same as his property;—*Held*, that the plaintiff was entitled, under his mortgage, to hold the hay and the winter rye, as being *in esse* at the time of the execution of his mortgage, but no part of the grain crop of the spring of 1859.

THIS is an action brought by Horace Cudworth against Charles Scott, for taking and carrying away, October 20, 1859, a quantity of hay, oats, oat straw, wheat, wheat straw, rye and rye straw, all which grew on the farm of one Corydon D. Keyes, in Hancock, in this county, during the year of 1859. The wheat, wheat straw, oats and oat straw, were from the sowing of the spring of 1859; the rye and rye straw were from the sowing of the fall of 1858.

The defendant was a deputy sheriff, and took and disposed of said property on a writ in favor of one Ambrose C. Blood, against said Keyes.

The only question in this case is, whether the plaintiff is entitled to hold any or all of said property by virtue of a mortgage from said Keyes to him, duly executed January 1, 1859, and recorded the same day. So much of said mortgage as is material to the case, is as follows: "I, Corydon D. Keyes, &c., in consideration, &c., do hereby grant, &c., unto the said Horace Cudworth, &c., the following articles of personal property: to wit, all the hay and grain, of every kind, that grows on the farm, on which I now live, the present year."

The property in question, except the rye, was sold as follows: the hay for $113.49; the wheat for $3.40; the

Cudworth v. Scott.

oats for $17.89; the oat straw for $3.38; and the wheat and rye straw for $3.50. The rye was given by Scott to Keyes for threshing the wheat, &c. The rye and rye straw were agreed to be of the value of $4, and the rye alone $3.

It was agreed that such judgment should be entered as the court might order upon the foregoing case.

*Morrison & Nutt*, for the plaintiff, contended (1) That whatever is the subject of sale is equally the subject of a mortgage; 2 N. H. 17; *Ash* v. *Savage*, 5 N. H. 545; Story on Bail., sec. 287; (2) That a valid sale could have been made at the date of the mortgage, of the grain and hay which is now in controversy. *McCarty* v. *Blevins*, 5 Yerg. 195; *Congreve* v. *Evetts*, 26 E. L. & E. 493; 1 Pars. on Con. 438; *Pitch* v. *Tutin*, 15 M. & W. 110; Dig. 18, 1, 8; Pothier, Cont. de Vente, n. 5, 6; Plowd. 13 a; *Grantham* v. *Hawley*, Hob. 132; 1 Harg. Co. Litt., n. 363; *Robinson* v. *MacDonnell*, 5 M. &. Sel. 228; Com. Dig., Grant, D; *Careton* v. *Leighton*, 3 Meriv. 667; 2 Kent Com. 468; *Lunn* v. *Thornton*, 1 M. Gr. & S. 383; 10 Met. 488.

*Dearborn & Cheney*, for the defendant, contended (1) That chattel mortgages, being unknown to the common law, derive their validity entirely from statutes; that the expression of our statute, "Crops of every description, whether the same have or have not come to maturity," could not have meant any thing not *in esse*, but that crops, after they became such, even though not mature, might be mortgaged; (2) That the mortgage was void for uncertainty, it not appearing from the language whether it was intended to mortgage all the hay and grain that might thereafter, in the year 1859, grow on the farm, or all the hay and grain then growing; that neither growing grain nor grass are such personal property as to be liable to attachment as such, or mortgaged independently of the statute; *Norris* v. *Watson*, 22 N. H. 364; 2 Bouv. Law Dict. 465;

Cudworth *v.* Scott.

that if it was intended to mortgage the hay and grain that might grow during the year, the mortgage was void, because it was to take effect *in futuro*, and the property was incapable of being delivered, or specifically designated and identified, or estimated, and, in fact, had no existence; *Bullock* v. *Williams*, 16 Pick. 33; 2 Hill. on Mort. 336, 340; *Barnard* v. *Eaton*, 2 Cush. 294; 2 Kent Com. 496; and (3) That whatever is the subject of sale is not necessarily equally the subject of a mortgage, because a delivery is necessary to constitute a valid sale as to third persons, and this property could not have been delivered. The contract might be good as between the parties, and an action maintained for a breach, yet no property could pass. 2 Kent Com. 504.

*C. R. Morrison*, in reply. (1) Chattel mortgages have been known to the common law for six hundred years. Glanville, Lib. 10, c 6; Bracton 99, b; Yelv. 179, note; Powell on Mort. 1, 2; Story on Bail., sec. 287. (2) The conclusion that whatever is the subject of a sale is equally the subject of a mortgage, results logically from the nature of the mortgage, as shown by the cases cited. Powell on Mort. 25. (3) The language of the mortgage includes both the hay and grain then growing, and the hay and grain that should grow that season. The present tense is often used in expressions that relate to the future, by good grammarians. (4) Where there can be no delivery of personal property at the time of the sale, the case forms an exception to the general rule; and it is sufficient if the vendee take possession and assert his title within a reasonable time after he has an opportunity. *Ricker* v. *Cross*, 5 N. H. 570; see also *Ash* v. *Savage*, 5 N. H. 545; *Haven* v. *Low*, 2 N. H. 13. (5) This is not a mortgage of property to be measured, weighed, counted off, or otherwise separated from other or larger parcels or quantities, and the decisions upon that subject do not apply. (6) The general

rule that a mortgage can only bind or affect property existing and capable of being identified at the time of its execution, is not controverted; but our case falls within a well recognized exception to, or qualification of this rule, which is admitted by the authorities cited by the defendant. Authorities before cited; also *Claflin* v. *Carpenter*, 4 Met. 580; *Olmstead* v. *Niles*, 7 N. H. 522.

NESMITH, J. The case before us finds that the defendant, as a deputy sheriff, seized and sold a quantity of hay, grain, &c., as the property of one Corydon D. Keyes, and as the product of his farm for the year 1859. The plaintiff sets up a title to the property so sold, claiming to hold it by virtue of a chattel mortgage, duly executed from said Keyes to him, for the purpose of securing his debt against the mortgagor, the said mortgage being duly executed and recorded, on the first day of January, 1859. The plaintiff brings his action of trespass; and the defendant justifies the taking of the property at issue, by virtue of a writ in favor of one Blood, a creditor of Keyes. The defendant denies the validity of the plaintiff's mortgage, and denies that the plaintiff had any title or subsisting lien on the property in question, on October 20, 1859; and this is the material question involved in this case. The parties to the mortgage adopted the following comprehensive description in their deed: "all the hay and grain, of every kind, that grows on the farm, on which I now live, the present year." It is admitted that there was winter rye and rye straw sold by the defendant as part of the crop of that farm that year, and which was sown in the fall of 1858; that the hay, the product of the farm for the year 1859, was seized and sold, of the value of $113.49; and that the other productions were raised from seed sown in the spring of 1859. The plaintiff relies upon the first section of chapter 138 of the Compiled Laws, as giving a foundation for his title: "Personal property, and crops of any description,

whether the same have or have not come to maturity, are subject to mortgage, agreeably to the provisions of this chapter." This statute is in affirmance of the common law on this subject, which, in the language of *Powell* (page 25), proclaims that " every thing which may be considered as property, whether, in the technical language of the law, denominated real or personal property, may be the subject of a mortgage. Possibilities, being assignable, are mortgageable,—a mortgage of them being only a conditional assignment. Any estate in lands, any rent or profit out of the same, may be mortgaged." It is alleged by the defendant that the property in dispute was not in existence at the time of the execution of the plaintiff's mortgage; but it is now said to be well settled, that a possibility, coupled with an interest, is assignable, and that a man may grant that which he hath potentially, though not actually. As, if a person grant all the tithe wool which he shall have in such a year, the grant is good in its creation, though it may happen that he shall have no tithe wool in such a year. So, it is said, a sale may be made of the wine that a vineyard is expected to produce, or the grain that a field is expected to grow, or the milk that a cow may yield for the coming year. See Hill. on Sales 11, and authorities there quoted; also 1 Pars. on Con. 438. So, in Tennessee it is held, that the owner of a mare during gestation may sell her future offspring, the property to vest in possession whenever such offspring shall be born. *McCarty* v. *Blevins*, 5 Yerg. 195; *Fourville* v. *Cavis*, 1 Murphy 389. A man may grant that which he hath potentially, though not actually; as, if a lessor covenants that it shall be lawful for the lessee, at the expiration of the lease, to carry away the corn growing on the premises, although by possibility there be no corn growing at the expiration of the lease, yet the grant is good, and the grantor has such a power in him, and the property shall pass as soon as the corn is extant. And if A leases land to B for years, and grants that

he shall have the natural fruit of the soil—as grass, which renews yearly—which shall be on the land at the end of the term, this grant is good, and passes the property to the grantee. 3 Bac. Abr. 383, Grant 3; *Grantham* v. *Hawley*, Hob. 132. By a grant of the *herbagium terræ*, or *vesturam terræ*, the soil does not pass; for, though he may have trespass *quare clausum fregit*, he shall have only the corn, grass, &c., and not houses, trees, mines, &c., which are fixed to the soil. Coke Litt. 4 b. So, if a man grant *suam pascuam*, the pasturage only passes; so a grant of all salable woods growing, or timber trees, does not pass the soil.

It is the duty of the court, in giving a construction to the present deed before us, to carry into effect, as far as possible, the intention of the parties, by giving a liberal and reasonable construction to it, so that *res valeat, et non pereat.* If we confine the terms of the grant to the actual grass or rye then in the soil of the grantor at the time of the execution of the deed, it may be inferred that the parties must have had knowledge that the grantor's farm had then, in actual or potential existence, the living agencies that do grow or produce both grain and hay. Here were, then, the living roots of the winter rye and grass then abiding in the soil, that formed the just basis for a crop of like kind, according to the invariable laws of vegetable growth, and of course a just foundation of the contract into which the parties chose to enter. It may not be unreasonable to limit the application of the deed to the product of such hay and grain as might grow from the rye that had been sown, and from the grass roots, to the exclusion of any subsequent spring crop. This construction will excuse us from doing that degree of injustice which would be involved in rejecting the deed as a nullity, or as being void for uncertainty, when, by a fair interpretation, we give effect to what the parties most obviously intended.

The next question presented is one of some difficulty,—whether the deed of mortgage must be executed and recorded as a real or personal mortgage. *Parsons* states that the weight of authority inclines to the doctrine that if a sale of growing grain, trees, fruits, or grass, contemplates a severance when grown, and a delivery distinct from the land, the subject of sale is, in contemplation of the parties, a mere chattel, and, therefore, is so, in the view of the law, so far as a contract of this nature is affected by the statute of frauds. *Austin* v. *Sawyer,* 9 Cow. 39; *Green* v. *Armstrong,* 1 Den. 551. The case of *Olmstead* v. *Niles,* 7 N. H. 522, is a leading authority, indicating that a sale of growing timber upon land, sold under an agreement that the purchaser shall have a certain time in which to take it off, though a sale of an interest in land, need not be by deed. A contract for the sale of standing wood or timber, to be cut and severed from the freehold by the vendee, does not convey any interest in the land, within the meaning of the statute of frauds. Such a contract is to be construed as passing an interest in the trees only when they are severed from the freehold, and not any interest in the land. *Claflin* v. *Carpenter,* 4 Met. 583. A mortgage of wood, or trees to be cut into wood, standing on land of the mortgagor, is a mortgage of personal property. *Cook* v. *Stearns,* 11 Mass. 533; *Nelson* v. *Nelson,* 6 Gray 385; *Douglass* v. *Shumway,* 13 Gray 498. The same is the doctrine in Maine. *Erskine* v. *Plummer,* 7 Gr. 447. It may be conceded as the law in England and in this country, that growing crops, as wheat, and corn, and vegetables, the annual produce of labor and cultivation of the earth, *fructus industriales,* are personal chattels, and not real estate, and may be conveyed by a verbal contract. *Jones* v. *Flint,* 10 Ad. & E. 753; *Evans* v. *Roberts,* 5 B. & C. 829; *Smith* v. *Surnam,* 9 B. & C. 561; 11 East 362; *Mumford* v. *Whitney,* 15 Wend. 387. But where the subject matter of a contract of sale is growing trees, fruit, or grass, the natural produce of the earth,

and not annual productions raised by cultivation and the industry of man, as they are parcel of the land itself, and not chattels, the contract, in order to be valid, must be in writing; or, as the court say in *Green* v. *Armstrong*, 1 Den. 554, may be by deed, or conveyance in writing, quoting *Olmstead* v. *Niles*, 7 N. H. 522, among the authorities to sustain this doctrine. The relation and construction of a chattel mortgage, embracing crops and grass, were well considered in the case of *The Bank of Lansingburgh* v. *Crary*, 1 Barb. 546, by the Supreme Court of New-York. In that case, Crary, of Washington county, N. Y., executed to Judge Savage, to secure a debt due to him, a chattel mortgage, dated May 11, 1847, embracing, among other things, all the produce of his real estate, consisting of one hundred and fifty acres of meadow, and of growing crops of corn, oats, rye, &c.,—which was duly recorded in the town-clerk's office, as required in this State. The sheriff of the county was requested to levy on the hay, or grass, on May 18, 1847, in behalf of one of the creditors of Crary. Subsequently, after the grass was cut, in October of the same year, the sheriff levied upon the hay, advertised, and sold it. Upon the consideration of the rights of the parties to the property in question, the court held that the first levy upon the grass was a nullity, as the property was not then subject to attachment. The court held the mortgage to be a substantial lien on the hay, and say, " After the forfeiture of the condition of the mortgage, as the mortgagee would, by the failure of the mortgagor to perform such condition, have acquired by the mortgage an absolute title to the mortgaged property, there would undoubtedly have been a severance, in contemplation of law, of the grass from the land, and it would then have become personal property,—the personal property, however, of the mortgagee, and not of the mortgagor." The court quote as authorities on this point, 9 Wend. 80; 1 Hill 478; 7 Cow. 290; 8 Johns. 76; *Brown* v. *Bement*, 12 Wend. 63;

Toller Exrs. 194. The court in that case further decided, that until a chattel mortgage becomes absolute by the non-performance of the conditions of the mortgage, the mortgagor has an interest in the chattels mortgaged that is liable to levy and sale on execution; and the purchaser, at the sale on execution, takes the property subject to the mortgage, and acquires with it the right to redeem it by payment of the amount due on the mortgage.

From the foregoing cases, and a fair construction of our own statute in reference to this subject, we may derive authority to treat the hay and winter rye, embraced in the mortgage to the plaintiff, as personal property which he has a right to claim, and in which a legal title had duly vested by operation of law. The plaintiff, having the right to the property in question, can maintain the action of trespass to recover the value of the hay and winter rye, with interest from the time of its conversion.