## BRINGHOLFF v. MUNZENMAIER *et al.*

20 513
111 719

1. **Notice**: FIXTURES. Fixtures so attached to the realty by the owner as to become a part thereof between vendor and vendee, pass to the vendee of the realty free of the lien of a prior mortgage of the same as personal property, of which said vendee had no notice. A purchaser, in searching the title to real estate, is not required to examine the record of chattel mortgages for incumbrances.

*Appeal from Polk District Court.*

MONDAY, JUNE 18.

FIXTURES: WHEN REMOVABLE: RECORDING ACTS, &C.—
The questions made arise upon the following agreed statement of facts:

"It is agreed by and between the parties to the above mentioned cause that on the trial of the same in the District Court of Polk county, at the January Term, 1866, the evidence introduced tended to establish the following propositions of fact; and for the purpose of abbreviating the records to be used in the trial thereof in the Supreme Court, it is stipulated that the following facts shall be considered as established by the evidence:"

I. On the part of the plaintiff:

1. That on the 23d day of August A. D. 1859, John F. Kappes and Fred. Reinig executed and delivered to the plaintiffs a certain chattel mortgage, which was duly executed and recorded in the proper record.

2. That at the date of the execution of said mortgage, the malt-kiln, beer-cooler and kettle named in the petition, were used by said mortgagors, at the place named therein, in the manufacture of beer; and that one of the mortgagors, F. Reinig, testified, that they intended to embrace the same in said mortgages under the terms, tools and machinery.

3. That the plaintiff demanded said property on the 29th day of September, 1863, of the defendants, before the commencement of this action, and that they refused to deliver the same to them.

4. That the value of the several articles mentioned above was greater than the verdict of the jury.

II. On the part of the defendants:

1. That on the 26th day of August, A. D. 1858, the said malt-kiln, and beer-cooler and kettle, were so permanently

attached to the real estate, described in the defendant's answer, on which they were situated, as to form a part thereof as between vendor and vendee; that said kettle was set in masonry, which masonry was a part of the walls, in such manner that it could not be removed without removing the brick wall on two sides of it to the extent of five or six courses of bricks from top of the wall; that it has been removed once or twice by the defendants, for the purpose of repairs; that said beer-cooler, malt-kiln and kettle were placed on said real estate by the owners thereof, the said Kappes and Reinig, at the time a portion of the building was erected by them as a brewery.

2d. They have continuously remained so attached, and there was no actual severance of the same at the time of the execution of the mortgage under which plaintiff claims.

3d. That on the 20th day of August, A. D. 1858, the said John F. Kappes and Fred. Reinig executed a mortgage conveying said real estate to W. A. Rawson, which mortgage was filed for record, and was recorded in the proper record of said county.

4th. That said mortgage was foreclosed by a decree of the District Court of said county, entered on the 13th day of September, A. D. 1860, but plaintiffs were not made parties thereto.

5th. That pursuant to said decree, a special execution was issued under which said real estate was sold to W. A. Rawson, A. Y. Rawson acting as his agent, on the 28th day of September, A. D. 1861.

6th. That on the 21st day of May, A. D., 1863, the said W. A. Rawson sold and conveyed said real estate, including the property in controversy, to these defendants.

7th. That at said day last mentioned, the defendants entered into the possession of said property and have so remained ever since.

8th. That the malt-kiln was used only for the purpose of drying malt in the same, and that the beer-cooler was used only for the deposit of beer for the purpose of cooling the same.

9th. That there was no evidence tending to show a license to the plaintiff from either Kappes and Reinig, or the defendants to enter upon said premises, and sever the malt-kiln, beer cooler, and kettle therefrom, other than the execution of the mortgage upon which plaintiff claims.

III. On the part of the plaintiff in rebuttal:

1st. That the mortgage to W. A. Rawson was so defectively and imperfectively indexed, that the record thereof was inoperative as constructive notice to a subsequent purchaser.

2d. That plaintiff had no actual notice of the execution or existence of said mortgage until after the execution of the mortgage under which they claim.

3d. That at the sheriff's sale in the foreclosure of the Rawson mortgage, the said plaintiffs gave notice that they had a mortgage upon the tools and machinery in the building, and were told by A. Y. Rawson, the agent for W. A. Rawson, that it was the purpose to sell only the real estate.

(Signed)          POLK & HUBBELL,
                     *Att'ys for Pl'ffs.*

         THOMAS F. WITHROW and
         SEWARD SMITH,
                     *For Defendant.*

On the argument, it was admitted that the kettle was the only article for which the plaintiff insisted upon the right to recover. Plaintiff succeeded below, and defendants appeal.

*Withrow* and *Smith* for the appellants.

*Polk & Hubbell* for the appellees.

Bringholff v. Munzenmaier.

DILLON, J. — The questions arising in this case have been investigated by the respective counsel, with a degree of research and care greatly disproportioned to the value of the property at stake. The cause has been argued before us with rare ability. It is not proposed in this opinion, to follow the range of counsel, nor to elaborate our views ; but simply to state the conclusion reached, and briefly the grounds upon which it rests.

<div style="margin-left:2em">1. Notice: fixtures.</div>

Both parties claim under Kappes and Reinig, the original owners of the property ; the plaintiffs under a chattel mortgage, the defendants through a title derived from the foreclosure of a real estate mortgage embracing the property. The property in question, it is important to remember, was *originally owned by Kappes and Reinig.*

It was admitted that it was by them "so permanently attached to the real estate owned by them as to form a part thereof as between *vendor and vendee,* the kettle being set in masonry, which was a part of the walls," &c. Before the mortgages were made the property in question had become and was a part of the realty. As such, it would be embraced in the mortgage of the 20th of August, 1858, made by K. & R. to Rawson, under which the defendants derive title. But of this mortgage the plaintiffs had no notice when they received their chattel mortgage of the 23d day of August, 1859.

Did the property in question, being, as we have seen, *real* property, pass to the plaintiffs by virtue of their chattel mortgage? The plaintiffs maintain that it did, claiming it to be the law that the owner of lands may sell or mortgage fixtures thereon situate, which sale or mortgage has the effect in law to sever them and make them personalty ; and that the mortgage itself is a license to the mortgagee to enter upon the premises and take the mortgaged property. To support these propositions the following authorities have

been cited and commented upon by the plaintiffs' counsel: *Folsom* v. *Moore*, 19 Me., 252; *Rapps* v. *Barker*, 4 Pick., 238, 242; *Smith* v. *Bensen*, 1 Hill (N. Y.), 176; *The Bank, &c.,* v. *Crary*, 1 Barb., 542, 547, 548; *Goddard* v. *Gould*, 14 Id., 662, 665; *Mott* v. *Palmer*, 1 Comst., 564, 568; *McClintock* v. *Graham*, 3 McCord, 553; *Byasse* v. *Ruse*, 4 Metc. (Ky.), 372; *Henly* v. *Brodie*, 16 Ark., 511.

These propositions are denied by the defendants' counsel, who contend that property *which is de facto* real estate cannot be *constructively* disannexed, and by virtue of such constructive severance (there being no severance in fact, and none immediately contemplated) made personal property and sold and mortgaged as such. And defendants' counsel cite and rely upon the following authorities: *Richardson* v. *Copeland*, 6 Gray (Mass.), 536; *The President, Directors and Company of The Union Bank* v. *Emerson*, 15 Mass., 159; *Gray* v. *Holdship*, 17 Serg. & R., 413; *Lee* v. *Risdon*, 2 Eng. C. L. (7 Taunt., 188), 320; Amos & Fer. on Fixt., 232; *Cook* v. *Stearns*, 11 Mass., 537; *Benton* v. *Sherpf*, 1 Allen, 133; *Whitemarsh* v. *Walker*, 1 Metc. (Mass.) 314; *Nettleton* v. *Sikes*, 8 Id., 35.

In the view we take of the case it is not at all necessary to pass upon these questions. We may admit the plaintiffs' position that as *between them* and *Kappes & Reinig*, the property in question, though realty in fact, became, by virtue of the chattel mortgage, constructively severed and constructively personalty. Yet this doctrine of constructive severance (if well founded) could not, in our judgment, be made to apply against subsequent purchasers of the real property without notice of the constructive severance.

And just here it is, upon the agreed statement of fact, that the plaintiffs must fail. Defendants are purchasers of the property in question (for as between mortgagor and mortgagee, and vendor and vendee, it was part of the

realty), without any *actual notice* of the plaintiff's claim; at least, no such notice is stated to exist, and it must therefore be assumed that the defendants, at the time of their purchase of the real estate from Rawson, had no such notice.

They had no *constructive notice* of the plaintiff's right, because the plaintiff's mortgage was a *chattel* mortgage, and recorded and indexed as such. There never having been any *actual severance* of the articles in question, and the same being admitted to constitute, as between vendor and vendee, part of the realty, a subsequent purchaser would not be bound to take notice of the record of a *chattel* mortgage thereon; the statute requiring these to be separately recorded, and separately indexed. Revision, ch. 93 and 96.

If the defendants, at the time of their purchase, had been shown to have had knowledge of the plaintiff's mortgage, the question then arising would be much more difficult of solution. But without such knowledge, it appears to us plain that the defendants have the title to the property in controversy. Any other rule would practically nullify the registry laws, or else introduce the startling doctrine that in examining the title to *real estate*, the searcher must also examine the records of chattel mortgages.

If the defendants, prior to their purchase from Rawson, had visited the premises, they would have seen the property in question, constituting to all appearance, part of the real estate. There would be nothing on the ground and nothing in the nature of the property to advise them of the plaintiff's adverse right or ownership. Rawson, and not plaintiff, was, it seems, in possession. If defendants should then examine the records of real estate transfers, they would there discover nothing advising them of the plaintiff's claim. They are, therefore, entitled to and do stand free from it.

And it is upon this ground, without discussing others,

that we place our judgment, that under the agreed state-ment of facts, the law is with the defendants. We need not say how the case would be if the contest were between landlord and tenant.

The judgment entered in the court upon the verdict of the jury is

Reversed.

COLE, J., having been of counsel, took no part in the decision.