### MELTON et al. v. FULLERTON–WEAVER REALTY CO.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

TROVER AND CONVERSION (§ 2*)—PROPERTY SUBJECT OF CONVERSION—DEFECTIVE CONTRACT.

Where defendant, the owner of a building, contracted with plaintiffs for razing it, the contract giving plaintiffs all material taken therefrom, defendant's refusal to permit plaintiffs to proceed with the work, thus depriving them of material still in the building, will not render defendant liable for conversion, as the property was realty; a mere contract between the parties not being sufficient to change it into personalty.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 3–20; Dec. Dig. § 2.*]

Laughlin and Clarke, JJ., dissenting.

Appeal from Appellate Term, New York County.

Action by Samuel Melton and others against the Fullerton-Weaver Realty Company. From a judgment for plaintiffs and an order denying its motion for new trial, defendant appeals. Reversed and remanded.

See, also, 141 N. Y. Supp. 1131.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Albert Blogg Unger, of New York City (Roger B. Wood, of New York City, on the brief), for appellant.

David Slade, of New York City (Benjamin Slade and Maxwell Slade, both of New York City, on the brief), for respondents.

McLAUGHLIN, J. The defendant was the owner of certain real estate in the city of New York, including a building thereon. It desired to tear down the building for the purpose of erecting a new one, and to that end entered into the contract with the plaintiffs referred

to in the opinion of Mr. Justice LAUGHLIN. When the building had been partially demolished, the defendant, claiming that the plaintiffs had violated the contract in not tearing down the building and removing the materials within the time specified, prevented further performance and did the work itself, or through another contractor. At the time the contract was terminated, a substantial portion of the building remained. This action was brought to recover damages for the value of the material which remains in the undemolished part of the building, as well as other material remaining on the premises; the claim being that defendant, by excluding plaintiffs, thereby converted such material to its own use. The case was tried and submitted to the jury on the theory that the building was, by the contract referred to, constructively severed from the realty and at once became personal property.

I am unable to concur in this view. When the contract was made the building was real property, and its character as such could not be changed except by an actual severance from the land upon which it stood. The difference between the real and personal property exists, not by virtue of an agreement, but by nature of the subject. Real estate cannot be changed into personalty merely by calling it such. The walls of a building, no matter of what composed, so long as they remain an integral part of the building, are real estate, and it is beyond the power of parties interested, by agreement, to change them into personal property. Ford v. Cobb, 20 N. Y. 344.

This was pointed out in Davis v. Bliss, 187 N. Y. 77, 79 N. E. 851, 10 L. R. A. (N. S.) 458; the court saying:

"It doubtless is the rule that personal property may be so firmly attached to or thoroughly and substantially made a part of the realty that its character as personalty will not be preserved even by special agreement intended to accomplish that result."

In People ex rel. I. R. T. v. O'Donnel, 202 N. Y. 313, 95 N. E. 762, the question presented was whether certain machinery and power houses were real property within the meaning of the Rapid Transit Act (Laws 1891, c. 4). The court held that the machinery was not, but that the power houses were, saying:

"On the other hand, these power houses were most substantial structures, composed in large measure of brick and stone and steel and iron. They were so constructed on the land that apparently they could only be removed by utter demolition. They were primarily and essentially real property, and never had existence in any other character. They were so fundamentally real property that probably interested parties dealing with them could not, by express agreement, have given them any other character than that of real property."

In Western Union Telegraph Co. v. B. & S. Ry. Co. (C. C.) 11 Fed. 1, it was said that bricks which were built into the walls of a building, or shingles that form the roof, or stones that go into the foundation of a house, cannot, even by agreement of the parties, be made to retain their character as personal property, for the obvious reason that they become so inseparably affixed to the realty as to be a part of it, independent of any question as to the intent of the parties.

There are expressions in several opinions to the effect that an agreement may constitute a constructive severance of growing timber, thereby changing it from real to personal property; but I have been unable to find any authority in this state with the possible exception of Warren v. Leland, 2 Barb. 613, where that question has been squarely decided. Thus, Bank of Lansingburgh v. Crary, 1 Barb. 542, and Lacustrine Fertilizer Co. v. Lake G. & F. Co., 82 N. Y. 477, state that growing grass or trees become personal property without an actual severance, merely by virtue of a sale of them by the owner of the land; but the point was not necessary to the decision in either case.

In Warren v. Leland, supra, the court based its decision on the ground that growing trees became personalty merely by virtue of the contract of sale. But that decision was, to a certain extent, disapproved in Goodyear v. Vosburgh, 57 Barb. 243, on the ground that the doctrine of constructive severance had nothing to do with the question decided. Green v. Armstrong, 1 Denio, 550, and Vorebeck v. Roe, 50 Barb. 302, merely mention the doctrine of constructive severance of growing trees or grass, without expressing any approval.

In Lacustrine Fertilizer Co. v. Lake G. & F. Co., supra, it was held that soil removed from the land of one person and placed on the land of another, with his consent, and without an intention on the part of the former to reclaim it, or an agreement authorizing him to remove it, becomes a part of the land of the latter.

Authorities, which hold that things of a personal nature, such as fixtures, etc., annexed to the freehold of a person other than the owner, may, by agreement between him and the owner, retain their character as chattels, are not applicable, and this for the reason that the chattels in the cases to which the doctrine is applied were such originally and never became a part of the land at least to such an extent as to lose their identity.

Here, we have a building standing upon land concededly real estate, and I am unable to see upon what principle an agreement to tear it down and remove the materials of which it is composed can change it from real estate into personal property. If it does not, then the determination of the Appellate Term and the judgment of the City Court should be reversed and a new trial ordered, with costs to appellant to abide event.

INGRAHAM, P. J., and SCOTT, J., concur.

LAUGHLIN, J. This is an action for the conversion of 125 loads of brick, 2 boilers, 10 tons of old iron, 50 windows, and 100 window sills. The defendant owned the premises, known as Nos. 71–77 East Eighty-Second street in the borough of Manhattan, New York, a five-story and basement brick apartment house, which had been erected thereon. On the 3d day of June, 1911, defendant entered into a contract in writing and under seal with plaintiff by which it sold to him all the material of which the apartment house was composed with the exception of "a Fitzgibbons Boiler," which the plaintiffs agreed to protect from injury during the demolition of the building; and plain-

tiffs thereby agreed to tear down and remove and cart away all of the materials in the building, down to the level of the cellar floor, including all foundation and other walls, "excepting only the retaining walls in the yards and the area walls along Eighty-Second street and Park avenue," and to remove and cart away all débris, and to leave the premises "broom cleaned to the level of the lowest cellar floor." In the third article of the agreement it was provided that time should be of the essence of the contract and that the plaintiffs should proceed with the work "with the utmost diligence and dispatch," and have the work "entirely completed on or before July 25, 1911." The plaintiffs further agreed, among other things, to provide all the labor and materials required for the performance of the work covered by the contract, and to pay the defendant the sum of $900 for the building. The contract contained other provisions designed to protect and secure the defendant against liability for a violation of state and municipal laws and ordinances and for injuries to persons or property; and in the event that the plaintiffs refused or neglected to supply sufficient workmen and materials, or to prosecute the work diligently, or to perform the agreement in any other respect, it was provided that the defendant should be at liberty "at its election, to forthwith terminate the employment of the contractor, giving notice in writing of its election, and to enter upon the premises and to take possession, for the purpose of completing the work included under this agreement, of all the materials, tools and appliances belonging to the contractor, and to employ any other person or persons to finish this work and to provide the materials therefor, at the expense of the contractor." Article 8 of the contract provides as follows:

"Should the contractor complete all the work comprehended under this agreement on or before July 25, 1911, the owner will pay the contractor the sum of five hundred dollars ($500.00), as a bonus. In the event of the contractor failing to complete all the work comprehended under this agreement on or before August 3, 1911, the contractor shall pay the owner forthwith the sum of five hundred dollars ($500.00), as a penalty."

The plaintiffs commenced work on the 5th day of June; and on the 25th of July, the date specified for the completion of the work, the building had been removed to the street level. There were three boilers in the basement of the building, only two of which, as has been seen, were purchased by the plaintiffs. The work remaining to be done at that time was the removal of these two boilers and the foundation walls, so far as they were required to be removed by the plaintiffs, and removing the débris. On July 25th and until July 28th or 29th, according to the testimony introduced in their behalf, the plaintiffs continued the work, including the removal of the foundation walls, with a gang of about 35 men, and then their men were driven from the premises by another contractor who was employed by the defendant to finish the work; but, according to testimony introduced by the defendant, the plaintiffs continued on the work during that time with only about seven or eight or ten men, and they were engaged in removing loose material, but did nothing further with respect to demolishing the foundation walls, which were of stone and brick. The plaintiffs were not permit-

ted to continue the work or to remove any further materials after they were so driven from the premises; and the remaining work was performed by the other contractor, who, acting by authority from and under direction of the defendant, removed the remaining material, walls, and the boilers.

, The plaintiffs seek to recover the value of the material embraced in their contract remaining on the premises when they were excluded therefrom, and appropriated by the defendant or its contractor. The action is brought upon the theory that this material which had been part of the real property was constructively severed from the realty and at once became personal property by virtue of the contract. The uncontroverted evidence shows that some of the material claimed to have been converted had been severed from the building and remained upon the premises or adjacent thereto; and evidence by the plaintiffs tends to show that the two boilers had been severed and were loose and detached, but that is controverted. With the exception of the boilers, there is a conflict in the evidence with respect to the quantity of the various items of material for which the plaintiffs seek to recover; but they adduced evidence tending to show the quantities and values as alleged. If therefore the plaintiffs were entitled to recover for all of the material, the amount of damages became a fair question of fact on the evidence, which was sufficient to sustain the verdict. If, however, as contended by the learned counsel for the defendant, the plaintiffs were only entitled to recover for that part of the material which had been actually severed from the building, then the verdict cannot be sustained, either on the evidence, or on the theory on which the case was tried, for the evidence shows that a large part of the material had not been severed from the realty, and the case was submitted to the jury on the theory that the plaintiffs were entitled to recover for all of it.

It is contended in behalf of the defendant that the trial court erred in not submitting to the jury the question as to whether its claim that the plaintiffs did not prosecute the work with due diligence, which if sustained would have entitled it to take possession and complete the work, was not well founded. The charge indicates that the learned trial court was of opinion that *title* to all the material passed to the plaintiffs, by virtue of the contract, unaffected by the question as to whether or not the defendant exercised its right, in the event that the facts justified it, to take possession of the work and complete it; and that inasmuch as no counterclaim was pleaded for the expense of completing the work, as contemplated by the contract in such event, the court did not deem that question important. It is not necessary to express an opinion on that point on this appeal, for it is not fairly presented. Counsel for the defendant requested the court to rule, as matter of law, that his client was entitled to exclude the plaintiffs from the premises and to finish the work. The court properly declined to instruct the jury as so requested, for that depended upon conflicting evidence. No request was made to submit the question of fact to the jury as to whether the circumstances were such as to justify the de-

fendant in excluding plaintiffs and finishing the work. The court, however, did say to the jury in the course of the charge:

"You come down, therefore, to the question of damages, and there must be some damage in this case, in view of the construction which the court has placed upon that instrument"—meaning the contract.

An exception was taken by defendant to this instruction. It is now claimed that the court thereby, in effect, took from the jury the question of fact with respect to whether or not the defendant was justified in excluding the plaintiffs from the work, and ruled as matter of law that it was not. It is manifest that this part of the charge did not relate to that question, and it was the duty of counsel, if he thought it did, to draw the attention of the court thereto specifically.

Counsel for the defendant contends, inasmuch as time was of the essence of the contract and the work was required to be completed on or before the 25th day of July, that the plaintiffs were in default, and that they forfeited any right they might otherwise have had to the material. I am of opinion that in view of the provisions of article 8 of the contract, herein quoted, the plaintiffs had until and including the 3d day of August to complete the work. If the plaintiffs completed the work on or before the 25th day of July, the defendant agreed to give them a bonus of $500; and, in the event of their failure to complete the work on or before the 3d day of August, they became liable to the defendant in a like sum, as a penalty. That provision necessarily gave the plaintiffs the right to continue the work until the 3d day of August, if by due diligence it could not be completed sooner. See Vandegrift v. Cowles Eng. Co., 161 N. Y. 435, 55 N. E. 941, 48 L. R. A. 685.

The remaining question is as to whether this contract constituted a severance of the building material from the realty, so that, as between the parties, title thereto at once passed to the plaintiffs as personal property. I am of opinion that it did and that the defendant is liable therefor in conversion. Stackpole v. Eastern Rd., 62 N. H. 493; 2 Cooley on Torts (3d Ed.) 838; Tyson v. Post, 108 N. Y. 217, 15 N. E. 316, 2 Am. St. Rep. 409. The building was, of course, realty, and the statute of frauds requires that a contract for the sale thereof to be valid should be in writing (McGregor v. Brown, 10 N. Y. 114; Green v. Armstrong, 1 Denio, 550; see, also, Bank of Lansingburgh v. Crary, 1 Barb. 542; Warren v. Leland, 2 Barb. 613; Vorebeck v. Roe, 50 Barb. 302), and the contract in question fully answers that requirement. The law is well settled in this jurisdiction that growing timber becomes *as between the owner and vendee* constructively severed from the realty under a valid contract of sale thereof. Bank of Lansingburgh v. Crary, supra; Warren v. Leland, supra. See, also, Lacustrine Co. v. Lake Guano, etc., Co., 19 Hun, 47; Id., 82 N. Y. 476; Goodyear v. Vosburgh, 57 Barb. 243; Smith v. Jenks, 1 Denio, 580; Kingsley v. Holbrook, 45 N. H. 313, 86 Am. Dec. 173; Hoit v. Stratton Hills, 54 N. H. 109, 20 Am. Rep. 119; 13 Am. & Eng. Enc. of Law (2d Ed.) p. 615; McClintock's Appeal, 71 Pa. 365; Reeves on Real Property, § 53.

I see no distinction in principle between a sale of growing timber and the sale of the material in a building which is to be forthwith demolished by the vendee; and I am of opinion that, where the owner desires and intends to sell either and executes a written contract therefor, there is at once a constructive severance, and that the property sold, which was realty before, becomes personal property, as between the parties. It is competent for the owner of real estate to contract with a tenant, or another, for the erection of a building of any description on the premises, whether for trade or for residential purposes, and to provide that as between the parties the same shall remain personal property and removable, and trover will lie in such case for a refusal to permit the removal. McFadden v. Allen et al., 134 N. Y. 489, 32 N. E. 21, 19 L. R. A. 446; Tyson v. Post, supra; Smith v. Benson, 1 Hill, 176; Dame v. Dame, 38 N. H. 429, 75 Am. Dec. 195; Van Ness v. Pacard, 2 Pet. (U. S.) 137, 7 L. Ed. 374; 2 Cooley on Torts, supra; Mott v. Palmer, 1 N. Y. 564; Leonard v. Clough, 133 N. Y. 292, 31 N. E. 93, 16 L. R. A. 305. What it is competent for the owner to do in advance of the erection of a building upon his premises, it is, I think, where the rights of third parties are not affected, competent for him to accomplish by the destruction and removal of the building after it has been erected. The contract merely reimpressed the original character upon it after the material had become part of the realty. Tyson v. Post, supra.

In the case at bar, the only parties in interest, or who could in any manner be affected by the contract, which contemplated the actual severance of the building with expedition, were the owner and the plaintiffs. In the cases in which a different rule has been authoritatively laid down, recording acts or the rights of third parties, or public interests, were involved. See Ford v. Cobb, 20 N. Y. 344; Fryatt v. Sullivan Co., 5 Hill, 116; Tifft v. Horton, 53 N. Y. 377, 13 Am. Rep. 537; Duffus v. Howard Furnace Co., 8 App. Div. 567, 40 N. Y. Supp. 925; Voorhees v. McGinnis, 48 N. Y. 278; Sisson v. Hibbard, 75 N. Y. 542; Lacustrine Co. v. Lake Guano, etc., Co., supra; Vorebeck v. Roe, supra; Davis v. Bliss, 187 N. Y. 77, 79 N. E. 851, 10 L. R. A. (N. S.) 458; People ex rel. I. R. T. v. O'Donnel, 202 N. Y. 313, 95 N. E. 762; 13 Am. & Eng. Enc. of Law (2d Ed.) p. 622.

I am of opinion, therefore, that the plaintiffs were entitled to recover for the material not actually severed, as well as for the material which had been actually severed from the realty. These views lead to an affirmance of the determination of the Appellate Term, with costs.

CLARKE, J., concurs.